Commonwealth *v.* Palmer, Appellant.

Argued June 15, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Robert M. Pressman,* with him *Pressman and Lipsky,* for appellant.

*Stephen J. Margolin,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 19, 1973:

While appellant raises numerous contentions, the only issue meriting consideration is the claim that prejudicial pretrial publicity so influenced the jury that a new trial should be granted.

On January 4-5, 1972, police conducted an investigation into a reported rape in the Mount Airy section of Philadelphia. On the morning of January 5th, appellant signed a written statement admitting his participation in the incident. On February 13, 1972, "Today" magazine, a Sunday supplement to the Philadelphia Inquirer, ran a story, entitled "A Rapist's Assault on the Social Fabric of an Integrated Community." The article described the events involving the assault on an unnamed housewife in Mount Airy. It reported that appellant was arrested and charged with the offense, and that while he had "no adult record in Philadelphia, . . . he was arrested five times as a juvenile, once for indecent assault on an 11 year-old girl."

On October 10, 1972, appellant was brought to trial before the Honorable Judge Joseph C. BRUNO and a jury. A verdict was returned finding appellant guilty on charges of forcible rape, sodomy and burglary.

Appellant contends that, although there was no evidence that the jurors had any pre-knowledge of the circumstances of the rape or appellant's criminal record, the pretrial publicity was so "inherently prejudicial" that he was deprived of a fair and impartial trial. Appellant argues that recent decisional law supports his position. We do not agree.

While it is true that, certain circumstances may co-exist to dispel the requirement of proof of actual prejudice where there has been pretrial publicity, the instant case is not such a situation. In the instant case, we are not faced with a barrage of publicity coming during or just before trial: *Sheppard v. Maxwell*, 384 U.S. 333 (1966) and *Marshall v. United States*, 360 U.S. 310 (1959); neither is the case one of great notoriety, sensationalism or wide public interest: *Estes v. State of Texas*, 381 U.S. 532 (1965); the crime did not take place in a sparsely populated town where there was a "reasonable likelihood" that one or more of the jurors would have heard or read about the crime or the accused: *Corona v. Superior Court*, 24 Cal. App 3d 872, 101 Cal. Rptr. 411 (1972) and *Maine v. Superior Court*, 66 Cal. Rptr. 724 (1968). On the contrary, the crime and trial took place in Philadelphia, a city having a population of over two million. The publicity was limited to one "prejudicial" story, appearing in a supplement to a Sunday newspaper. The story appeared, furthermore, eight months prior to trial.

Recently, our Supreme Court decided *Commonwealth v. Pierce*, 451 Pa. 190, 303 A. 2d 209 (1973), which recognized that certain situations could exist where publicity was so "inherently prejudicial" that "Pierce need not have shown a nexus between the publicity and ac-

tual jury prejudice." 451 Pa. at 195. In *Pierce,* Justice EAGEN, writing for the Majority, noted that each case involving pretrial publicity had to be decided on its facts. Pierce's conviction was reversed because of a number of factors: the crime and publicity arose in Media, Delaware County having a population of between 6-7,000; a televised "re-enactment" of the crime was broadcasted on local networks; statements by police and prosecutors to the press implicating the appellant and describing his past record came in a steady wave of publicity prior to trial; and, the circumstances of the crime were of wide public appeal. *Commonwealth v. Jones,* 452 Pa. 299, 304 A. 2d 684 (1973), the companion case to *Pierce,* supra, involved the same criminal acts, but produced a contrary result. The Court distinguished the case by noting that the publicity was limited to printed matter in the form of factual reporting which did not directly implicate Jones in the crime.

In *Commonwealth v. Hoss,* 445 Pa. 98, 283 A. 2d 58 (1971), a murder case, our Supreme Court refused to grant a new trial because of pretrial publicity. As the Court stated at 106: "We cannot find that the pretrial publicity in this case so tainted the community of 1 1/3 million people as to make a fair trial impossible. We consider it significant that . . . there was a lengthy time period between the arrest and trial of more than five months." See also, *People v. Gambino,* 12 Ill. 2d 29, 145 N.E. 2d 42 (1957).

On the facts of this case, we cannot say that there was a "reasonable likelihood" that "prejudicial" pretrial publicity, consisting of one feature story in a Philadelphia news supplement appearing months prior to trial, affected the fairness and impartiality of the subsequent trial of the appellant.

Judgment of sentence is affirmed.