Commonwealth *v.* Reese, Appellant.

328

Submitted September 8, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Calvin S. Drayer, Jr.*, Assistant Public Defender, for appellant.

Stewart J. Greenleaf, Assistant District Attorney, William T. Nicholas, First Assistant District Attorney, and Milton O. Moss, District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., December 1, 1975:

On December 2, 1973, at approximately 1:30 P.M., appellant was in the exercise yard of Montgomery County Prison, where he was temporarily confined awaiting disposition of charges unrelated to the instant case. At that time appellant accosted a fellow inmate, stabbing him 9 or 10 times in the chest with a sharp instrument. Appellant was indicted, tried by a jury, and convicted of simple and aggravated assault, assault by a prisoner and attempted murder. Post-verdict motions were denied and appellant was sentenced to an aggregate of 8 to 20 years imprisonment. Appellant now appeals to this court.

Initially appellant contends that the lower court erred in failing to grant his motion to dismiss on the basis that appellant was denied his right to a speedy trial, as required by Pa. R. Crim. P., Rule 1100. Rule 1100(a)(1) provides that cases in which complaints were filed between June 30, 1973, and July 1, 1974, must be brought to trial within 270 days. In this case the complaint was filed on December 3, 1973, and appellant was brought to trial on January 14, 1975, 408 days later. The 270 day period is not, however, inflexible, in that extensions are explicitly provided for in the Rule itself. Rule 1100(d)(1) provides that "[i]n determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from . . . the unavailability of the defendant or his attorney." Therefore, in the instant case we must determine whether the unavailability of the defendant or his attorney accounted for the 138 day delay beyond the 270 day period provided for bringing appellant to trial.

The first such delay to be considered is a 118 day period between March 5, 1974, and July 2, 1974, during which time proceedings were conducted to determine whether appellant was competent to stand trial. That issue was raised when Dr. Robert C. Bowman, the attending psychiatrist at Western State Penitentiary, petitioned the court pursuant to Section 408(b) of Mental Health and Mental Retardation Act of 1966[1] to examine and evaluate appellant. As a result, the Commonwealth petitioned the court to appoint a sanity commission and, on March 5, 1974, such a commission was appointed. On July 2, 1974, the commission determined appellant was competent to stand trial.

It is obvious, for several reasons, that this 118 day period must be excluded pursuant to Rule 1100(d)(1) from determination of the period for commencement of trial. The law is clear that conviction of a legally incompetent accused violates due process. See *Pate v. Robinson*, 383 U.S. 375 (1966); *Bishop v. United States*, 350 U.S. 961 (1956); *Commonwealth v. Kennedy*, 451 Pa. 483 (1973); and *Commonwealth v. Smith*, 227 Pa. Superior Ct. 355 (1974). Further, one who is legally incompetent cannot be indicted. See *Commonwealth v. Kohr*, 228 Pa. Superior Ct. 195, 200-201 (1974). Therefore, until obtaining the result of the sanity commission, there was no choice but to delay both trial and indictment. This delay must be attributed to the unavailability of appellant and, therefore, excluded from the period for commencement of trial pursuant to Rule 1100(d)(1). See *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258, 264 (1974). This conclusion is in accord with the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, Section 3.2(a). It should be further noted that appellant's attorney not only

---

1. Act of October 20, 1966, Special Sess. No. 3, P.L. 96, art. IV, §408(b), 50 P.S. §4408(b).

failed to object to the appointment of the sanity commission, but he in fact joined in the Commonwealth's petition for the appointment of such commission. After such action he cannot now reasonably object to the delay caused by the commission's proceedings.

The second delay to be considered is a 51 day delay which the lower court held to be attributable to the unavailability of defendant's counsel. Appellant was scheduled to go to trial on November 24, 1974. However, on November 15, 1974, it was realized that appellant's counsel was already scheduled to try a complex criminal case during the last week of November. Therefore, the court, on its own motion, rescheduled appellant's trial for January 14, 1975. Appellant did not object to this rescheduling until January 3, 1975, after the 270 day period and 118 day period had run. At that time appellant made a motion to dismiss on the ground that, as it turned out, he was available the last week in November; and, therefore, the 51 day delay from November 15, 1974, to January 14, 1975, could not be attributed to his unavailability. The question which comes to mind is why did appellant's counsel wait until January 3, 1975, to inform the court that he was available the last week in November. If he was, in fact, available the last week in November, and if he did, in fact, want to go to trial on November 24, 1974, he could have simply made the court aware of these facts on November 15, 1974, when the rescheduling occurred. His failure to do so precludes his objection to the 51 day delay he subsequently made on January 3, 1975. Accordingly we hold that the 51 day delay was attributable to the unavailability of appellant's attorney. When this 51 day delay is coupled with the 118 day delay attributable to the unavailability of appellant, and both are subtracted from the 408 day period, the trial was timely commenced according to Rule 1100.

Appellant's second contention is that he was denied a fair trial because the Commonwealth failed to produce

certain witnesses which he requested. This contention is without merit for several reasons. First, appellant knew on November 15, 1974, that his trial was scheduled for January 14, 1975. This gave him two months to secure the witnesses needed at trial. Instead, appellant chose to wait until January 9, 1975, to request two witnesses; until January 10, 1975 to request two more witnesses; and until January 17, 1975, to request three more witnesses. The fact that only two out of the seven witnesses were produced is not surprising; however, it is clearly not the fault of the Commonwealth. As this court stated in *Commonwealth v. Miranda,* 222 Pa. Superior Ct. 158, 162 (1972) : "A defendant cannot idly delay until the date set for trial and then request compulsory process to secure witnesses in his favor." See also *Commonwealth ex rel. Jennings v. Maroney,* 179 Pa. Superior Ct. 571 (1955). Furthermore, there is a procedural matter which also negates appellant's contention. Knowing that his witnesses were not present at trial, appellant neither moved for a continuance nor a mistrial. Instead he proceeded with trial without objection. This clearly constitutes a waiver of such issue. As our Supreme Court recently stated in *Commonwealth v. Bronaugh,* 459 Pa. 634, 636, 331 A.2d 171, 172 (1975): "We have held that issues not preserved at each stage of review, by a specific allegation of error, are waived and subsequently cannot be raised in an appeal to this Court."

Appellant's third contention concerns a newspaper article, the existence of which appellant claims entitles him to a new trial. The article, which appeared on January 15, 1975, published an account of the trial proceedings and made several statements which would have been prejudicial to the appellant if seen by members of the jury. Upon learning of the article in question, the trial court asked the jury if any of them had seen the article. One juror admitted to having seen the caption of an article bearing appellant's name, but realizing that the article

dealt with appellant's case, he put it down and did not read it. However, there were two jurors who admitted reading the article, and they were removed as jurors in the case on appellant's motion. The court then installed two previously selected alternate jurors in their place and continued with the trial. We can conclude, therefore, that the article was not read by any of the jurors who found appellant guilty. Nevertheless, appellant contends the newspaper article denied him a fair trial. Appellant shows no prejudice, but claims instead that the publicity was so inherently prejudicial that he need not show a nexus between the publicity and actual jury prejudice. See *Commonwealth v. Pierce,* 451 Pa. 190 (1973) and *Commonwealth v. Palmer,* 225 Pa. Superior Ct. 370 (1973). We find that the single newspaper article does not even begin to approach the cases where media accounts are so pervasive as to be inherently prejudicial. See *Sheppard v. Maxwell,* 384 U.S. 333 (1966); *Estes v. Texas,* 381 U.S. 532 (1965); *Rideau v. Louisiana,* 373 U.S. 723 (1963); and *Commonwealth v. Pierce,* supra.

Appellant's fourth contention is that the trial court committed error in failing to instruct the jury as to the various degrees of homicide in connection with the attempted murder charge. Here, however, appellant was not charged with homicide but, rather, was charged with criminal attempt to commit murder.[2] Appellant is guilty of attempt to commit murder or nothing at all. Under these circumstances a charge other than as to the elements of murder, generally, would have been inappropriate.

"A person commits an attempt when, with the intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime."[3] In the present case, the specific crime attempted was murder. Murder in this Commonwealth is still gov-

2. Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §901.

3. *Id.*

erned by the common law definition; i.e., the unlawful killing of another with malice aforethought, express or implied. *Commonwealth v. Bowden,* 456 Pa. 278 (1973). Although murder is delineated into murder of the first and second degrees,[4] the Common Law definition still governs and murder, whether it be of the first or second degree, is nevertheless murder. Therefore, the Commonwealth in the instant case was required only to prove intent to commit murder.

Appellant's request for a charge on voluntary manslaughter is equally inappropriate. As was stated in *Commonwealth v. Jones,* 457 Pa. 563 (1974), a defendant is not entitled to a charge on voluntary manslaughter, in the absence of evidence in support thereof, unless he specifically requests it. At trial the defendant offered no evidence to show provocation or other mitigating circumstances, and defendant did not request a charge on voluntary manslaughter. Furthermore, it should be noted that attempted murder is a felony of the second degree whether the murder attempted was murder of the first degree, murder of the second degree or even voluntary manslaughter.[5]

Appellant's fifth contention concerns the admission into evidence of five Commonwealth photographs depicting the geographical layout of the prison yard where the stabbing took place. Appellant's objection is that the photographs, which picture an empty prison yard, are misleading in that they convey the impression that each of the several prison guards who witnessed the incident had a clear view of the assault when, in fact, the yard was then occupied by a substantial number of prisoners. The photographs admitted in the instant case were clearly probative in that they delineated the geographical boun-

---

4. Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §2502.

5. Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §905(a), §2502, and §2503(c).

daries of the prison yard wherein the assault transpired, and the jury was thoroughly admonished as to the photographs' limited purpose:

"THE COURT: Members of the jury, I have been asked to remind you that the photographs that have been offered and received into evidence, and which you will take with you into the jury room, show a barren exercise yard to the rear of the prison.

"Well, this is surely true, and it is my understanding that the purpose of these photographs is simply to give you a picture of what that prison exercise yard looks like. And those photographs have no evidentiary value whatever, beyond that."

Furthermore, the admission of photographs in a criminal case is in the sound discretion of the trial court and will not afford grounds for reversal absent a flagrant abuse of discretion. *Commonwealth v. Fennell,* 444 Pa. 1 (1971); *Commonwealth v. Chasten,* 443 Pa. 29 (1971); *Commonwealth v. Dickerson,* 406 Pa. 102 (1962).

Appellant's sixth contention is that the trial court erred in refusing to specifically instruct the jury that the prison guards who testified for the Commonwealth were "interested witnesses" whose testimony should have been carefully scrutinized. Viewing the charge in its entirety it is apparent that the jury was afforded comprehensive and adequate instruction concerning the credibility of witnesses. Appellant's point for charge was therefore unnecessary. See *Commonwealth v. Jones,* 452 Pa. 569 (1973).

Lastly, appellant contends that the verdict was contrary to the weight of the evidence. As was stated in *Commonwealth v. Zapata,* 447 Pa. 322, 327 (1972):

"The grant of a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court. Where the evidence is conflicting, the credibility of the witnesses is solely for the jury and if its finding

is supported by the record, the trial court's denial of a motion for a new trial will not be disturbed." [Citations omitted.]

In the instant case the trial court's finding was amply supported by the record, and we find no abuse of discretion in not granting a new trial.

Affirmed.