385 A.2d 429

COMMONWEALTH of Pennsylvania

v.

**Edward S. QUARTMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 22, 1976.

Decided April 13, 1978.

Kenneth D. Brown, Assistant Public Defender, Williamsport, for appellant.

Robert F. Banks, First Assistant District Attorney, Greenville, and Allen E. Ertel, District Attorney, Williamsport, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellant was charged with two counts of burglary [1] and one count each of attempted rape [2] and aggravated assault with a deadly weapon. [3] He was found guilty in a trial by jury of all charges except attempted rape. A motion in arrest of judgment and for a new trial was denied by the court below. This appeal followed imposition of sentence.

Appellant argues that the court below erred in refusing to grant a mistrial when two Commonwealth witnesses commented upon appellant's assertion of his right to remain silent after receipt of his *Miranda* warnings. The Commonwealth called Trooper Robert Hanula of the Pennsylvania State Police. Hanula testified:

"As we drove along Mr. Quartman said, 'Ah Pete, ah Pete, you know me,' referring to Mr. Williams, Trooper Williams, excuse me. And Trooper Williams says, 'Don't ah Pete, ah Pete me.' He says, 'You don't know me.' And he said, 'I'm going to give you your rights.' So Trooper Williams read him his constitutional rights . . . he ask [sic] him did he understand them. He said, 'Ah Pete come on now, man. He said, you know and this type of talk. But then after that in his own admission, . . . he said, 'I was just trying to get me some peanuts.' . . And I look at [sic] and I said, 'What do, what do you mean peanuts. What are you talking about?' . . . 'You know man, trying to get me a piece, trying to get me a piece.' *And then he did say after Trooper Williams had*

1. 18 Pa.C.S. § 3502.

2. 18 Pa.C.S. § 3121.

3. 18 Pa.C.S. § 2702.

*given him his rights, the first thing he said was that, 'Well, then I'm not going to say nothing.'* He said he wasn't going to talk." (N.T. 243) (emphasis added). Defense counsel objected immediately and the court sustained the objection. The court, however, refused a requested mistrial.

■■■ Trooper Peter Williams was called next by the Commonwealth. Williams was asked if appellant made any statements after being advised of his rights. Williams replied:

"Well, the only statements that he made, he kept saying why are we doing this to him, that it was him we were looking for and he was in the car, and he said, he was just trying to get him a piece. This was on the way to the barracks. And I questioned him, I said, 'Well, a piece of what?' He says, 'You know man, a piece,' you know. *That's the only statements that he made,* then he said, I told him to be quiet cause he was making a lot of noise in the car. *He says, 'Well, I don't have to talk.' I says, 'No, you don't have to talk.' So he says, 'Well, I'm not talking then.'* " (N.T. 247) (emphasis added).

Appellant relies upon *Commonwealth v. Greco,* 465 Pa. 400, 350 A.2d 826 (1976), in which the supreme court declared it reversible error to admit evidence of a defendant's silence at the time of arrest. Such a reference is not, however, automatic justification for a new trial. *Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976). In this case, we find that the lower court did not err in refusing the requested mistrial.

First, from Trooper Williams' testimony, it appears that appellant's silence occurred not as an exercise of the right against self-incrimination, but rather as his response to a request to keep quiet. That being so, no rule of law would render testimony in that regard prejudicial error. Secondly, both the lower court judge in his opinion denying post-trial motions and appellant's counsel in his brief to this court indicate that they considered but opted against cautionary instructions. Both felt that curative instructions would tend

to reinforce the statements in the juror's minds. By sustaining both of appellant's objections to the statements, the court was indicating their impropriety. Although the requested mistrials were denied, it is not clear that a request for curative instructions would have been futile.

In a similar situation in *Commonwealth v. Maloney, supra,* the Pennsylvania Supreme Court declared:

"[W]e now specifically rule that in Pennsylvania adequate instructions under some circumstances may cure error of the nature here complained of." *Id.,* 469 Pa. at 349, 365 A.2d at 1241.

Had counsel desired curative instructions in the instant case, he could have requested them. It is clear that counsel should likewise be permitted to request that the court not give curative instructions *sua sponte.* In hindsight, counsel's decision to forego curative instructions may prove to have been a tactical error; it is likewise irremediable. In every case, it is a tactical decision to be made by defense counsel, and the rendering of an unfavorable verdict should not entitle a defendant, who did not elect to protect himself to the maximum in his first trial, to an automatic retrial.

The passing references to appellant's silence in the instant case do not differ in any material respect from those made in *Maloney.* In neither case did the district attorney exploit the appellant's silence. In *Maloney,* counsel opted for cautionary instructions and very adequate ones were given. In the instant case, there is every reason to believe that curative instructions would have negated any possible prejudice to which appellant was exposed. Appellant should have requested instructions himself or objected to the court's charge as failing to instruct on the matter *sua sponte.* Electing against the available relief at trial, appellant may not now complain of prejudicial error.

Appellant's next contention is that the court erred in permitting the Commonwealth to introduce into evidence his prior criminal record. Appellant's two guilty pleas to charges of burglary and larceny, dated February 3, 1967,

and June 2, 1972, were entered on the record, over his objection, at the conclusion of appellant's case.

■■■ It is well settled that it is within the trial judge's discretion to allow the prosecution to impeach a defendant by introducing his prior convictions for crimes centering on dishonesty or false statements. *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). Clearly, burglary and larceny are crimes denoting dishonesty. *Commonwealth v. Kahley,* 467 Pa. 272, 356 A.2d 745 (1976); *Commonwealth v. Amos,* 445 Pa. 297, 284 A.2d 748 (1971). The *Bighum* court articulated several factors to be considered by the trial court when ruling on admissibility of prior convictions.

> "Some of the considerations mentioned in *Luck* [*v. United States,* 121 U.S.App.D.C. 151, 348 F.2d 763 (1965)] were: the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction. 348 F.2d at 769. . . . Where the defendant has no other means by which to defend himself, it would be particularly unjust to subject him to the introduction of prior convictions. Or, where the prior conviction is not critically important to the Commonwealth's case—e. g., where other adequate means of attacking the defendant's credibility are available—exclusion of prior convictions is strongly indicated." *Commonwealth v. Bighum, supra,* 452 Pa. at 567, 307 A.2d at 263.

Appellant argues that his testimony was "the only means of presenting a complete and effective defense." (Appellant's brief at 25). While it is true that only the victim and appellant could testify to the crucial facts of their encounter, there were other means of defense available to appellant, and he in fact employed them. The appellant offered several witnesses to testify to the victim's bad reputation for chastity. It is also significant that a primary witness for the prosecution, who had interrupted appellant and the victim at her apartment and had given the police a statement damag-

ing to appellant, testified favorably to appellant at trial. The witness, Ellen Zerfing, declared shortly after the night in question that appellant charged at her with a knife when she entered the victim's apartment and that appellant ordered her to leave. At trial, the witness declared that she saw no knife, that appellant did not attack her and that both appellant and the victim ordered her to leave the premises. The prosecution was permitted to plead surprise and to introduce the prior statement, not to be used as substantive evidence. We do not find from the record that appellant's only defense was his own testimony and therefore cannot find on that basis that evidence of prior convictions was improperly admitted.

Credibility was certainly an important factor in this case. The jury obviously had a choice between the victim's tale of horrendous attacks, beatings and attempted ravishment, and appellant's version of an ongoing illicit relationship gone sour. Attacking the credibility of the opposition was central to both parties.

At the time of trial, the 1967 guilty plea was seven years old. Considering the *Bighum* factors under the circumstances of this record, we find no abuse of discretion in admitting the evidence of this conviction for impeachment purposes. And it follows that the 1972 conviction was also within the discretionary area of admission.

After examining the record, we find no merit in appellant's contention that the Commonwealth did not produce sufficient evidence to sustain the guilty verdict of burglary.

Appellant finally asserts that the court below erred when it allowed the district attorney to plead surprise and cross-examine its own witness, Ellen Zerfing, and introduce her prior conflicting statement. Fundamentally, it is within the sound discretion of the trial judge to permit a party to cross-examine its own witness. *Commonwealth v. Dancer,* 452 Pa. 221, 305 A.2d 364 (1973). Absent an abuse of discretion, this court will not interfere with the decision of

the lower court. *Commonwealth v. Conard,* 206 Pa.Super. 33, 211 A.2d 14 (1965). In determining the propriety of cross-examination of one's own witness, courts are provided with several guidelines. First, the testimony must be unexpected. *Commonwealth v. Turner,* 389 Pa. 239, 133 A.2d 187 (1957). Second, the testimony must be contradictory to statements earlier made by the witness. *Commonwealth v. Bynum,* 454 Pa. 9, 309 A.2d 545 (1973); *Commonwealth v. Knudsen,* 443 Pa. 412, 278 A.2d 881 (1971). Finally, the testimony must be injurious to the party calling the witness and beneficial to the other side. *Commonwealth v. Bynum, supra; Commonwealth v. Knudsen, supra.* In the instant case, we find the trial testimony of Ms. Zerfing to satisfy all of the enumerated criteria. There was no abuse of discretion in permitting the Commonwealth to exercise the right of cross-examining its own witness.

Judgment of sentence affirmed.

HOFFMAN and SPAETH, JJ., concur in the result.

CERCONE, J., dissents based on *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973).

WATKINS, former President Judge, did not participate in the consideration or decision in this case.