417 A.2d 1171

**COMMONWEALTH of Pennsylvania**

**v.**

**James MILLARD, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Dec. 21, 1979.

524

526

John P. Karoly, Jr., Assistant Public Defender, Allentown, for appellant.

William H. Platt, District Attorney, Allentown, for Commonwealth, appellee.

Before VAN der VOORT, MONTGOMERY and LIPEZ, JJ.

LIPEZ, Judge:

Appellant was convicted, after a jury trial, of burglary,[1] rape,[2] recklessly endangering another person,[3] felonious restraint,[4] terroristic threats,[5] and involuntary deviate sexual intercourse.[6] Appellant's post-verdict motions were dismissed, and he brings this appeal, claiming that 1) his motion to suppress was improperly denied; 2) his Rule 1100 rights were violated; 3) inflammatory evidence was admitted at trial; 4) his motion for mistrial, made when a Commonwealth witness allegedly testified concerning appellant's exercise of his right to remain silent, was improperly denied; 5) the trial court's jury charge concerning appellant's alibi was incorrect; and 6) the trial court should not have permitted an in-court identification of appellant based on an allegedly improper prior confrontation. None of appellant's assignments of error is meritorious, and we therefore affirm.

The events with which the case is concerned began when appellant gained entry to the victim's apartment through a window. He forced the victim into a bedroom, raped her and forced her to submit to deviate sexual intercourse, and then tied her to a bed, using, as the victim testified, nylon rope from a floor exerciser, hemp rope from a purse handle, electrical cord, telephone cord, two pieces of clothing cut into strips and wire. Appellant threatened to kill her if she called the police. The victim freed herself some twelve hours later and called police.

1. 18 Pa.C.S. § 3502.

2. 18 Pa.C.S. § 3121.

3. 18 Pa.C.S. § 2705.

4. 18 Pa.C.S. § 2902.

5. 18 Pa.C.S. § 2706.

6. 18 Pa.C.S. § 3123.

## I.

Local police then searched appellant's apartment pursuant to a warrant which described the items to be seized as follows:

One key chain containing black fob with BMW and initial ring with JAW on it. Several keys are on the key chain. Assorted frozen meats.

According to the Receipt/Inventory of Seized Property, the items actually taken were:

1 1½″ Lag bolt ⅜ square head rusty taken from a tan windbreaker type jacket 1 S.K. stainless open end box end wrench ⅜ size[.]

Appellant contends that the seizure of these items was illegal because the bolt and wrench were not "particularly described" in the warrant, as is required by the Fourth Amendment to the United States Constitution.

■ Appellant's reliance on *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), is unfounded. That case not only "created an inconsistency in the law of search and seizure for which the court offered no explanation,"[7] but also was finally rendered obsolete by *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). *Coolidge* "emphasized that under the so-called 'plain view' doctrine it would sometimes be permissible for police to seize items found while executing a search warrant naming other objects[.]" W. LaFave, 2 *Search and Seizure* 165 (1978); *see* 403 U.S. at 465–68, 91 S.Ct. at 2037–39. The police must come upon the evidence inadvertently, in a place where they have a legal right to be at the time of discovery, and it must be immediately apparent to them that the evidence is of incriminating character. *See* 403 U.S. at 465–69, 91 S.Ct. at 2037–40; *Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799 (1974).

In the case before us, the police were lawfully in appellant's apartment, executing the above-described search war-

---

7. W. La Fave, 2 *Search and Seizure* 164 (1978). *Marron* never received consistent interpretation in the lower courts. *Id.* at 163–65.

rant.[8] The victim had told police that she had seen appellant take the key chain and ring from her purse, and that her freezer, which had contained numerous items of frozen meat prior to appellant's entering her apartment, was empty after he had left. This information gave the police probable cause to believe that these items would be found at appellant's place of residence.

The police would not have been able to form such a belief regarding the wrench and lag bolt, however. In the course of their investigation, they had become aware that appellant had gained access to the victim's apartment in part by removing from a window frame a lag bolt which held in place protective bars. A police officer who examined the area while responding to the victim's call for assistance testified at the suppression hearing that one such bolt was lying nearby on the ground, while another appeared to be missing. The police, however, had no information concerning the location of the missing bolt before applying for the warrant. Further, although one might reasonably assume that such a bolt might have been removed with the assistance of a wrench of some sort, there was no positive evidence of this, and the record contains no indication that the police were in possession of any facts concerning the existence of such a wrench prior to the execution of the search warrant. The searching officer discovered the bolt first, while investigating the pockets of a jacket that had been lying, in plain view, on the apartment floor. The search of the pockets was reasonable because the small items listed in the warrant could easily have been placed therein. It was immediately apparent to the detective that the bolt was incriminating, because, as he testified at the suppression hearing, he "recognized it as one similar to what [he] had

8. Appellant also challenges the validity of the warrant itself. His claim that the warrant "contravenes" Pa.R.Crim.P. 2005 is as puzzling as it is meritless, since the record clearly shows, and appellant, in his brief, states, that the warrant does in fact comply with all requirements of Rule 2005. The record reveals that the warrant was executed on the day it was taken out, thus rendering nugatory appellant's further claim that the warrant was not served within two days of its issuance.

just seen in [his] investigation at [the victim]'s apartment." The detective, who had, shortly before discovering the bolt, seen a wrench lying, in plain view, on a table, then picked up the wrench and determined that "it was the same size as the lag bolt." With the discovery of the bolt, the relation of the wrench to the crime became apparent, and, at that time, the search was expanded to include the wrench. Both items were then seized by the police and introduced in evidence during the trial.

"[T]he police are not required to guess at their peril the precise moment at which they have probable cause." *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). "If the inadvertent discovery limitation is to make any sense at all, . . . it *must* at least mean that a discovery of objects not named in the search warrant is *always* inadvertent . . . if there were not sufficient grounds to justify the issuance of a warrant which also named those objects as among the things to be seized." *La Fave*, supra at 179. (emphasis in original). This "inadvertent discovery" exception has been applied in numerous cases. *See e. g., United States v. Davis*, 542 F.2d 743 (8th Cir. 1976); *United States v. Wysong*, 528 F.2d 345 (9th Cir. 1976); *United States v. Wolfe*, 375 F.Supp. 949 (E.D.Pa. 1974); *Alford v. State*, 307 So.2d 433 (Fla.1975); *State v. Hubbard*, 215 Kan. 42, 523 P.2d 387 (1974); *State v. Van Beek*, 87 S.D. 598, 212 N.W.2d 659; 88 S.D. 154, 216 N.W.2d 561 (1974); *State v. Clark*, 552 S.W.2d 256 (Mo.App.1977). Since we do not believe that the facts of record would have supported the inclusion of the bolt and wrench in the search warrant at the time of issue thereof, we conclude that their discovery was "inadvertent," for purposes of the ensuing warrantless seizure challenged herein.

■ Appellant's contention that the information contained in the warrant is insufficient to support a finding of probable cause is without merit. Probable cause should be determined by consideration of the entire affidavit. *Commonwealth v. Bryant*, 247 Pa.Super. 386, 372 A.2d 880 (1977). The affidavit must be read in a common sense and realistic

fashion, free of technical nit-picking. *Commonwealth v. Deren*, 233 Pa.Super. 373, 337 A.2d 600 (1975). Thus interpreted, the affidavit indicates that appellant, who had been charged with burglary, had been identified as the burglar in the case under investigation; that the property named on the warrant was evidence or the fruit of that crime; and that the property was located in his apartment. We conclude that this is sufficient to support the issuing authority's finding of probable cause.

## II.

■ Appellant claims, in his brief to this court, that he should be discharged because his trial began, in violation of his rights under Pa.R.Crim.P. 1100,[9] on March 7, 1977, some 271 days after the filing of the complaints on June 8, 1976. Upon examination of the record, it is apparent that appellant either waived or caused by his own unavailability more than ninety-one days of the delay.

On October 5, 1976 appellant's then defense counsel filed an "Application for Incompetency Examination Pursuant to Mental Health Procedures Act § 402." The court below, Wieand, J., ordered such an examination. The case was then listed for trial on November 9. On November 8, defense counsel advised the court, at a hearing before Davison, J., that the competency hearing was scheduled for November 18 and stated further that appellant would therefore be unavailable for trial during the then current term of court. On November 18, Dr. Paul Gross, a psychiatrist, attempted to conduct the requested competency examination. Appellant refused to speak to Dr. Gross, thus rendering an examination impossible. The case was relisted for the January 1977 term of Court, but defense counsel was engaged in another trial. A defense motion for a continuance was granted on February 2, at which time appellant expressly waived, prospectively, all Rule 1100 rights. He

---

**9.** Rule 1100(a)(2) provides:

Trial . . . shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

was examined on February 12 by a psychiatrist who concluded that he was competent to stand trial. Trial commenced on March 7.

The period at issue is, then, the 119 days between October 5, 1976 and February 2, 1977, appellant having waived any claims concerning February 3, 1977 through March 7, 1977 (the date the trial began).

> The law is clear the conviction of a legally incompetent accused violates due process. [Citations omitted.] Further, one who is legally incompetent cannot be indicted. [Citation omitted.] Therefore, until obtaining the result of the sanity commission, there was no choice but to delay both the trial and indictment. This delay must be attributed to the unavailability of appellant and, therefore, excluded from the period for commencement of trial pursuant to Rule 1100(d)(1).

*Commonwealth v. Reese*, 237 Pa.Super. 326, 330, 352 A.2d 143, 145 (1975).

■ Involved in *Reese* was a period of 118 days between the date of the petition to the trial court to appoint a sanity commission [10] and the date of the commission's determination that Reese was competent to stand trial. As this court emphasized in *Reese*:

> It should be further noted that appellant's attorney not only failed to object to the appointment of the sanity commission, but he in fact joined the Commonwealth's petition for the appointment of such commission. After such action he cannot now reasonably object to the delay caused by the commission's proceedings.

*Id.* 237 Pa.Super. at 330–31, 352 A.2d at 145. *A fortiori*, since, in the case before us, appellant not only moved for a mental examination himself (through his attorney) but also personally thwarted at least one attempt to conduct same by refusing to speak to the psychiatrist appointed by the court to examine him, he cannot now complain of a delay only one day longer than that held to constitute unavailability of the

**10.** Reese was examined under the now partly repealed Mental Health Procedures Act, 50 P.S. § 4408.

defendant in *Reese*. The Commonwealth was not remiss in not filing a petition for extension of time, since the delay in the instant case was caused by appellant's unavailability. *Commonwealth v. Wright*, 260 Pa.Super. 341, 394 A.2d 582 (1978). The period at issue being completely excluded, it is apparent that appellant's trial commenced within one hundred eighty days of the filing of the complaint against him, and so there was no infringement upon his right to a speedy trial as defined by Rule 1100.

### III.

 The trial court committed no error in admitting a photograph of the victim and the ropes and wires with which she had been bound. The admission of such evidence is within the discretion of the trial court and will not be reversed absent a flagrant abuse of that discretion. *Commonwealth v. Bartlett*, 446 Pa. 392, 288 A.2d 796 (1972); *Commonwealth v. Novak*, 395 Pa. 199, 150 A.2d 102 (1959), *cert. denied*, 361 U.S. 882, 80 S.Ct. 152, 4 L.Ed.2d 118.

The photograph depicted the victim fully clothed and showed some of the bruises and other injuries she sustained during the attack. A medical witness had testified concerning the injuries. The ropes and wires were used by the victim during her testimony to illustrate the manner in which the attack proceeded. The record thus shows no undue prejudice to appellant or inflaming of the jury's passions against him as a result of the trial court's admission of this evidence, and we conclude therefore that the court did not abuse its discretion in so doing. *See Commonwealth v. Nahodil*, 462 Pa. 301, 308, 341 A.2d 91, 94 (1975).

### IV.

 Appellant argues that the following question and answer together constitute improper comment, by a police officer testifying for the Commonwealth, upon appellant's purported exercise of his constitutional right to remain silent:

THE COURT: Did [appellant] say that he did or didn't want to talk? A. He didn't answer.

> It is a violation of the accused's constitutional rights against self-incrimination to make reference to his silence while in police custody. *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694, 720 n. 37 (1966); *Commonwealth v. Singletary*, 478 Pa. 610, 387 A.2d 656 (1978). Not every such reference, however, requires a new trial. *Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976). *Commonwealth v. Quartman*, 253 Pa. Super. 460; 385 A.2d 429 (1978). Prompt and adequate cautionary instructions can cure what might otherwise be reversible error. *Commonwealth v. Williams*, 252 Pa.Super. 435, 381 A.2d 1285 (1978). However, unless a defendant requests curative instructions, thereby attempting to protect himself to the maximum in his trial, he will not be heard to complain on appeal of prejudicial error. *Commonwealth v. Quartman*, supra, 253 Pa.Super. at 464, 385 A.2d at 432.

*Commonwealth v. Humphreys*, 267 Pa.Super. 318, at 325, 406 A.2d 1060, at 1064 (1979) (slip op. at 4).

We note first that the interchange is, at most, an indirect reference to appellant's purported election to remain silent, since it does not even indicate that appellant, while in custody, was asked a question by the officer to which he had refused to respond. In addition, the officer had already testified that he had had a conversation with appellant after his arrest, and that appellant had made certain statements to him, at police headquarters, concerning the crimes for which he had been arrested. This weakens any prejudice that may have been engendered by the subsequent challenged remark. *Commonwealth v. Anderjack*, 271 Pa.Super. 334, at 347, 413 A.2d 693, at 699 (1979). There is no indication, on the record, that the attorney for the Commonwealth attempted, in any way, to capitalize upon this testimony describing what, at most, may have been appellant's apparently momentary failure to respond. Appellant moved for a mistrial, but did not request cautionary instructions and made no objection to the court's omission from its

charge of any sort of cautionary instruction concerning the matter. The court, therefore, committed no abuse of discretion in denying the motion for mistrial, but we cannot be certain that a request for curative instructions would have been futile. "Electing against the available relief at trial, appellant may not now complain of prejudicial error." *Commonwealth v. Quartman*, supra, 253 Pa.Super. 460, 464, 385 A.2d 429, 432 (1978).

## V.

 Appellant's claim that the trial court, in its charge, improperly placed upon the defense the burden of proving appellant's alibi defense by failing sufficiently to apprise the jury that the defense has no such burden is without merit. The relevant portion of the charge [11] places no such improper burden upon the defense.

11. The trial court charged on this issue as follows:

Secondly, his defense is: I wasn't there, he sets up in the law what is known as an alibi. Obviously the defendant cannot be guilty unless he was at the scene of the alleged crime. The defendant has offered evidence to show that he was not present at the scene, but rather was at his apartment listening to the ball game. I believe he said the Phillies; that he was quietly listening to the Phillies; and there he was also reposing with the woman with whom he was living, described as his fiancee. Therefore, at or about eleven thirty, I think, he was home. He was reading a book, and I would say to you, if you believe that testimony, obviously the defendant is not guilty, because again I say to you, the Commonwealth must prove beyond a reasonable doubt not only that it was the defendant who committed the crime, but that he in fact did all of the acts charged in the complaint, as I have given them to you.

Then you will remember that he took the stand. His testimony was very brief. He recited how at a precise time he took his dog out for a walk; that he ended up someplace to buy a beer, that he had been reading; that his fiancee had gone to bed; and that he then went to his bed; and that during the alleged offense he couldn't have committed this crime, because he was sleeping. That's known as an alibi, he wasn't there.

Now, frequently jurors get this word alibi mixed up. Sometimes we say to a child: I don't want any alibis from you, meaning, I don't want to hear any argument that you didn't do it. In the law by alibi, we mean: I wasn't there, and therefore I couldn't have committed the crime. If you believe it, that's the end of the case. Then he's not guilty of anything at all.

## VI.

Appellant contends, finally, that the court below erred in permitting the victim's in-court identification of appellant because it was tainted by a previous improperly suggestive identification. We conclude, to the contrary, that, even if the prior procedure were illegal (which issue we do not reach), the in-court identification was independently grounded in the victim's opportunity (to which she testified at trial), during the commission of the crimes, to scrutinize appellant's face and other distinguishing physical characteristics in detail for at least one half hour in a well lighted room. The trial court therefore committed no error in permitting the identification. *Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975).

Judgment of sentence affirmed.