437 A.2d 29

COMMONWEALTH of Pennsylvania, Appellant,

v.

Anthony TERRA.

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed Nov. 13, 1981.

Kristine F. Hughey, Assistant District Attorney, Media, for Commonwealth, appellant.

Thomas A. Bergstrom, Philadelphia, for appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal by the Commonwealth from an order suppressing alleged drugs and drug paraphernalia seized without a warrant by county agents who had accompanied federal agents during the execution of a federal warrant to search the premises for a machine gun. The lower court agreed with the Commonwealth that there was probable cause to support the issuance of the federal warrant, but it rejected the Commonwealth's argument that the county agents' seizure of the drugs was justified by the "plain view" doctrine of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Instead, the court held that the county agents had probable cause to believe that there were drugs in the apartment, and that they were therefore obliged to get a search warrant for the drugs; it was not enough, in the court's view, that they should accompany the federal officers during the execution of the warrant to search for the machine gun, and seize any drugs that happened to be in plain view. Although we agree with the lower court that there was probable cause to support the federal warrant to search for the machine gun, we do not agree that there was also probable cause to support a warrant to search for drugs. It follows from this conclusion that the county agents were entitled to seize drugs in plain view. We therefore reverse the suppression order and remand for trial.

Since at least September 1977 Anthony Terra, a Darby Township police officer and the appellee in this case, was

one of the subjects of a joint investigation by agents of the Federal Bureau of Alcohol, Tobacco and Firearms (ATF), the Federal Bureau of Investigation, and the Criminal Investigation Division of Delaware County (CID). According to one federal agent, the investigation concerned "alleged firearms and narcotic[s] theft[s] from the Darby Police [e]vidence [l]ocker, gambling violations . . . [and] loansharking activities." N.T. 6.[1]

On September 10, 1979, Dennis E. Dutch, a special agent with the ATF, obtained a warrant from a federal magistrate authorizing a search of the premises at 941 South Avenue, Apartment B–4 in Secane, Pennsylvania, for a Thompson machine gun with the serial number S516465. On September 12, 1979, the warrant was executed by ATF agents, who were accompanied by agents of the FBI, the CID, the Delaware County District Attorney, and the Ridley Township Police Department. In the apartment at the time were appellee and a young woman. Appellee informed the agents that the machine was at his mother's house, and he offered to allow them to search for the gun there. Nonetheless, the ATF agents searched the apartment. They did not find the machine gun,[2] but they did see, on the dining room table, and on a coffee table, and open shelves, suspected drugs and drug paraphernalia, which were then taken by the CID agents.

Appellee was charged with violations of the Controlled Substance, Drug, Device and Cosmetic Act.[3] On November 30, 1979, he filed an omnibus pre-trial motion seeking suppression of all evidence seized during the September 12 search. On December 20, 1979, the lower court held a hearing on this motion, and on January 15, 1980, it entered

1. All references to the notes of testimony are to the December 20, 1979, suppression hearing.

2. The ATF agents subsequently obtained the machine gun, with appellee's consent, at the house of appellee's mother.

3. 35 P.S. § 780–101 *et seq.*

an order granting the motion to suppress. It is from this order that the Commonwealth appeals.[4]

On appeal the Commonwealth agrees with the lower court that there was probable cause to support the federal warrant to search for the machine gun. It argues, however, that the court erred in finding that there was also probable cause to support a warrant to search for drugs. The Commonwealth's position is that there was no such probable cause, and since the CID agents had properly gone along to accompany the federal agents, they were entitled to seize any contraband that was in plain view.

Appellee is in essential agreement with the way in which the Commonwealth has framed the issues. He contends, however, that the federal warrant was not supported by probable cause, and that even if it was, the CID had sufficient probable cause to support a warrant to search for the drugs, so that their warrantless seizure of the drugs was in violation of his constitutional rights. Brief for Appellee at 2, 4A.

1

We must first decide whether there was sufficient probable cause to support the federal warrant. If there was not, there is no question but that both the federal and the county agents were improperly on the premises, and the evidence must be suppressed. *Coolidge v. New Hampshire, supra.*

The affidavit in an application for a search warrant must contain sufficient information to enable the issuing authority to make an independent judgment that probable cause for a search exists. This means that the issuing authority "must be informed of some of the underlying circumstances from which the informant concluded that [the items to be searched for] were where he claimed they were, and some of the underlying circumstances from which the officer [signing the affidavit] concluded that the informant ... was 'credible' or his information 'reliable.'" *Aguilar v.*

---

4. The order is appealable because it will either result in the termination of, or will substantially handicap, the prosecution. *Commonwealth v. Kunkel*, 254 Pa.Super. 5, 385 A.2d 496 (1978).

*Texas*, 378 U.S. 108, 114–15, 84 S.Ct. 1509, 1513–14, 12 L.Ed.2d 723 (1964) (citations omitted).

Here the affidavit reads as follows: [5]

(1) During the week of November 20, 1977, Thomas Lacey, an attorney and duly elected magistrate in Delaware County, PA, and Bureau of Alcohol, Tobacco and Firearms Special Agent Randy L. Davis, met Anthony T. Terra, who is a Darby, PA Police Sergeant. At that meeting, Terra displayed to Lacey and Special Agent Davis a Thompson machine gun with an attached silencer which was contained in a mandolin case. Terra stated he was a police officer, but stated to Special Agent Davis that the machine gun was his, and did not belong to the police department.

(2) During the week of February 19, 1978, Terra offered to sell his machine gun to Special Agent Davis for $1800.00.

(3) During the week of March 20, 1978, Special Agent Davis was present with Terra who stated to another person that he (Terra) possessed a Thompson machine gun.

(4) During the week of November 1, 1978, Terra showed Thomas Lacey his (Terra's) Thompson machine gun. Lacey noted that the serial number of the machine gun was S516465. Lacey furthermore, in the past has observed Terra take the machine gun from a mandolin case which was located in the living room of the apartment of Katherine DiBuono, a/k/a Casey, 941 South Avenue, Apt. B–34, Secane, PA. DiBuono was also present at the time the machine gun was displayed. Terra told Lacey that DiBuono is his girlfriend, and that he lives with her at her apartment at 941 South Avenue, Apt. B–34, Secane, PA.

(5) During the week of January 21, 1979, a close associate of Terra's told Lacey and Special Agent Davis that Terra and two other Darby Police officers had, in the

---

**5.** A copy of the affidavit was attached to appellee's memorandum of law in support of his motion to suppress.

past, obtained three machine guns by falsely using the name of the Darby Police Department to order them. After these machine guns had been illegally obtained by Terra and the other two officers, they claimed that the guns were never received by the Darby Police Department, although in fact the guns were received by Terra and the two other officers. This conversation was also repeated by the close associate to the affiant on or about February 14, 1979. In addition, the close associate had learned this through repeated conversations with Terra during the year of 1978. A check of the National Firearms Registration and Transfer Record by the affiant reveals that three Thompson machine guns were purchased by the Darby Police Department during 1975.

(6) On August 30, 1979, Agent Davis had a conversation with Terra. The conversation took place in Thomas Lacey's office, although Lacey was not present. During this conversation, Agent Davis asked Terra if Terra still had his machine gun. Terra answered yes, and added that he would never get rid of it.

(7) A check of the National Firearms Registration and Transfer Record by the affiant revealed that on November 20, 1975, three Thompson .45 caliber machine guns with the serial numbers S–185554, S–245843 and S–516465 were registered to the Borough of Darby Police Department, 44 North Ninth Street, Darby, Pennsylvania.

(8) A further check of the National Firearms Registration and Transfer Record by the affiant indicates that Anthony T. Terra, Jr. does not have any firearms registered to him.

(9) On September 1, 1979, at 941 South Avenue, Apartment B–34, Secane, Pennsylvania, Terra told Lacey that he (Terra) still had the machine gun which was stored in the bedroom of the apartment.

The lower court held that the information in paragraph five did not meet the requirements of *Aguilar* because

it did not indicate why appellee's "close associate" was credible or his information reliable. The court concluded, however, that even without the information in paragraph five, there was sufficient information from which the issuing authority could make an independent determination that probable cause existed. We agree.

The affidavit, it will be observed, provided the issuing authority with information from four sources. We must therefore examine each of these sources to determine whether the requirements of *Aguilar* were met.

The first informant was Thomas Lacey, an "attorney and duly elected magistrate in Delaware County." Affidavit, Para. 1. Lacey provided the following information. During the week of November 20, 1977, appellee, a Darby Police sergeant, showed Lacey and Randy L. Davis, a special agent of the ATC, a Thompson machine gun with an attached silencer. Although appellee said that he was a police officer, he stated that the machine gun was his and did not belong to the police department. Affidavit, Para. 1. During the week of November 1, 1978, appellee again showed Lacey the gun and Lacey noted that its serial number was S516465. Lacey had "in the past" observed appellee in possession of the gun at the apartment of Katherine DiBuono at 941 South Avenue, Apt. B–34, Secane. Appellee told Lacey that DiBuono was his girl friend and that he lived in her apartment. Affidavit, Para. 4. Finally, on September 1, 1979, nine days before the search warrant was issued, appellee told Lacey that he "still had the machine gun which was stored in the bedroom of the apartment." Affidavit, Para. 9.

The second informant was Special Agent Davis. Davis provided the following information. During the week of February 19, 1978, appellee offered to sell Davis "his machine gun" for $1800. Affidavit, Para. 2. During the week of March 20, 1978, appellee stated to another person, in Davis's presence, that he possessed a Thompson machine gun. Affidavit, Para. 3. On August 30, 1979, appellee spoke with Davis in Lacey's office. When Davis asked

258

appellee if he still had "his machine gun," appellee said that he did and "would never get rid of it." Affidavit, Para. 6.

The information provided by Lacey and Davis met the first requirement of *Aguilar*, that the issuing authority be told how the informant obtained the information, for all of the information was the result of personal observations by the informants. The information also met the second requirement of *Aguilar*, for the informants were a . "duly elected magistrate" and a government agent—persons whose reliability need not otherwise be established. *See United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.")

The third informant was the affiant himself, who checked the National Firearms Registration and Transfer Record and obtained the following information. On November 20, 1975, three Thompson .45 caliber machine guns with serial numbers S–185554, S–245843 and S–516465 were registered to the Darby Police Department. Affidavit, Para. 7. Appellee, however, had no firearms registered in his name. Affidavit, Para. 8. This information also met both requirements of *Aguilar*.

The fourth informant was a "close associate" of appellee, who had learned "through repeated conversations" with appellee that he and two other Darby police officers had obtained three machine guns for themselves "by falsely using the name" of the police department. Affidavit, Para. 5. This information met the first requirement of *Aguilar*, for the issuing authority was informed how the informant obtained it, but it did not meet the second requirement, for it included none of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable.

Appellee contends that without the information contained in paragraph 5—that appellee and two other officers had illegally obtained three machine guns by falsely using the

name of the Darby Police Department—there was not sufficient information for the issuing authority to make an independent judgment that his possession of a machine gun registered to the police department was illegal. In his brief counsel for appellee states that he "is simply unaware of any statute [or] case law . . . which makes it a criminal offense for a police officer to be in possession of a weapon which is properly registered to the police department to which he is assigned." Brief for Appellee at 31. Counsel further argues that any statements that the gun was appellee's, not the department's, and any attempt to sell the weapon, are irrelevant. *Id.* at 31.

We disagree. We believe that the issuing authority was entitled to make an independent judgment that appellee's possession of the machine gun was probably illegal, given reliable information that the gun was registered to the police department; that no gun was registered to appellee; that appellee had falsely—as shown by the registration— said that the gun was not the department's but his; that appellee said he kept the gun in the bedroom of his girl friend's apartment; and that on one occasion, appellee offered to sell the gun. These facts are quite inconsistent with counsel's suggestion that the affidavit merely depicted "a police officer . . . in possession of a weapon which is properly registered to the police department . . . ."

## 2

We must now decide whether the seizure of the drugs and drug paraphernalia by the CID agents who accompanied the federal agents executing the warrant was in violation of the Fourth and Fourteenth Amendments.

The Commonwealth argues that the seizure was justified by the "plain view" doctrine of *Coolidge v. New Hampshire, supra.* In *Commonwealth v. Millard*, 273 Pa.Super. 523, 417 A.2d 1171 (1979), we summarized this doctrine as follows:

*Coolidge* "emphasized that under the so-called 'plain view' doctrine it would sometimes be permissible for police to seize items found while executing a search warrant naming other objects[.]" W. LaFave, 2 *Search and Seizure* 165

(1978); *see* 403 U.S. at 465–68, 91 S.Ct. at 2037–39. The police must come upon the evidence inadvertently, in a place where they have a legal right to be at the time of discovery, and it must be immediately apparent to them that the evidence is of incriminating character. *See* 403 U.S. at 465–69, 91 S.Ct. at 2037–40; *Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799 (1974).

\* \* \* \* \* \*

"[T]he police are not required to guess at their peril the precise moment at which they have probable cause." *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). "If the inadvertent discovery limitation is to make any sense at all, . . . it *must* at least mean that a discovery of objects not named in the search warrant is *always* inadvertent . . . if there were not sufficient grounds to justify the issuance of a warrant which also named those objects as among the things to be seized." *LaFave*, supra at 179. (emphasis in original). This "inadvertent discovery" exception has been applied in numerous cases. *See e. g., United States v. Davis*, 542 F.2d 743 (8th Cir. 1976); *United States v. Wysong*, 528 F.2d 345 (9th Cir. 1976); *United States v. Wolfe*, 375 F.Supp. 949 (E.D. Pa.1974); *Alford v. State*, 307 So.2d 433 (Fla.1975); *State v. Hubbard*, 215 Kan. 42, 523 P.2d 387 (1974); *State v. Van Beek*, 87 S.D. 598, 212 N.W.2d 659; 88 S.D. 154, 216 N.W.2d 561 (1974); *State v. Clark*, 552 S.W.2d 256 (Mo. App.1977).

*Id.*, 273 Pa.Super. at 528–529, 417 A.2d at 1174–75.

In *Millard*, the police, while executing a warrant to search for a key chain and assorted frozen meats, seized a bolt and wrench. We held that since "the facts of record would not have supported the inclusion of the bolt and wrench in the search warrant at the time of [its] issue . . . their discovery was 'inadvertent.' " *Id.*, 273 Pa.Super. at 530, 417 A.2d at 1175.[6]

6. Both the Commonwealth and appellee draw our attention to two federal cases also holding that the "inadvertence" requirement of *Coolidge* is met by an absence of probable cause. *United States v.*

 Applying these principles here, the Commonwealth argues that the CID agents had "a legal right" to be in the apartment, since they were there to assist the federal agents in the execution of the warrant to search for the machine gun; that the drugs and drug paraphernalia were "immediately apparent," since they were found on table tops and open shelves; and finally, that discovery of the drugs and drug paraphernalia was "inadvertent" in that, although the federal and county agents suspected they might find drugs and planned what to do if they did, they did not have enough information to make out probable cause for the issuance of a warrant to search the apartment for drugs. Appellee's difference with the Commonwealth revolves around the third of these propositions; while agreeing that *Coolidge's* requirement of inadvertence can be met by an absence of probable cause, appellee contends that here there was probable cause, and, therefore, that the CID agents could, and should, have obtained a warrant.

At the suppression hearing ATF Agent Dutch, the affiant on the application for the federal warrant, testified that the ATF, the FBI, and the CID had been engaged in an investigation of appellee since September 1977. The investigation focused on gambling, loansharking, and the theft of firearms and drugs from the Darby Police Department. N.T. 6. Dutch testified that he had first obtained information about drug use by appellee in March 1978, and had subsequently received similar information "[o]n approximately eight or ten separate occasions," N.T. 15, the most recent of which was "[a]pproximately four months prior" to September 1979, when the warrant to search for the machine gun was issued, N.T. 16.

It is settled that stale information cannot support a finding of probable cause. *Commonwealth v. Tolbert*, 492 Pa. 576, 424 A.2d 1342 (1981); *Commonwealth v. Shaw*, 444 Pa. 110, 281 A.2d 897 (1971); *Commonwealth v. Nycz*, 274 Pa.Su-

Sanchez, 509 F.2d 886 (6th Cir. 1975); *United States v. Hare*, 589 F.2d 1291 (6th Cir. 1979). The Second Circuit has also adopted this rule. *See United States v. Liberti*, 616 F.2d 34 (1980), *cert. denied* 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980).

per. 305, 418 A.2d 418 (1980); *Commonwealth v. Albert*, 264 Pa.Super. 390, 399 A.2d 1106 (1979). Information of drug use by appellee "[a]pproximately four months" old was too stale to support a finding that it was probable that drugs would be found in appellee's apartment in September 1979. *See Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582 (1975) (five month old information stale); *Commonwealth v. Eazer*, 455 Pa. 320, 312 A.2d 398 (1973) (61 day old information stale); *Commonwealth v. Hagen*, 240 Pa.Super. 444, 368 A.2d 318 (1976) (information at least one and one-half months old stale); *Commonwealth v. Novak*, 233 Pa.Super. 236, 335 A.2d 773 (1975) (seven week old information stale); *Commonwealth v. Suppa*, 223 Pa.Super. 513, 302 A.2d 357 (1973) (16 day old information stale without evidence of continuing activity); *Commonwealth v. Bove*, 221 Pa.Super. 345, 293 A.2d 67 (1972) (34 day old information stale).

In holding that there was probable cause to search for drugs, the lower court relied on the fact that both the federal and county agents suspected that there might be drugs on the premises and planned what to do if they found them. Majority opinion at 32–33. There is no question but that all of the agents present suspected that they might find drugs, N.T. 10, 89, 104, 112, 115, 132–35, and planned that any drugs they found would be taken by the CID agents, N.T. 69–70, 91–94, 115–16, 132–35.

> There are many times when a police officer may "expect" to find evidence in a particular place, and that expectation may range from a weak hunch to a strong suspicion. However, the Fourth Amendment prohibits either a warrant to issue or a search based on such an expectation. Yet if in the course of an intrusion wholly authorized by another legitimate purpose, that hunch or suspicion is confirmed by an actual observation, the police are in precisely the same position as if they were taken wholly by surprise by the discovery. The same exigent circumstances exist, and no warrant could have been obtained before the discovery.
>
> *United States v. Hare, supra* at 1294.

The order of the lower court is reversed and the case remanded for trial.