**Dale WHITE, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 1085 S 402.

Supreme Court of Indiana.

Dec. 30, 1987.

E. Nelson Chipman, Jr., Plymouth, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Dale White was tried before a jury and convicted of burglary, a class B felony, Ind. Code § 35–43–2–1 (Burns 1985 Repl.) and theft, a class D felony, Ind. Code § 35–43–4–2(a) (Burns 1985 Repl.). The jury also determined that White was a habitual offender, Ind. Code § 35–50–2–8 (Burns 1985 Repl.). The judge sentenced White to five years imprisonment for the burglary conviction concurrent with two years imprisonment for the theft conviction. The sentence for theft was enhanced to thirty-two years by the habitual offender determination.

On direct appeal, White raises two issues:

1) Whether the trial court erred in denying White's motion to suppress tennis shoes seized during a warrantless search of his home, and

2) Whether the trial court erred in admitting a photograph of White.

The evidence most favorable to the verdict shows that an electrical contracting business was burglarized on the night of January 24, 1984, or during the early morning of January 25, 1984. Copper wire and tools were stolen.

The perpetrator gained entry by breaking a window. A footprint resembling a tennis shoe was found on a table directly under the broken window. Matching footprints were found in the snow just outside the broken window. Officer Rex Crump followed the footprints, which led down the alley and to White's home.

Officer Crump knocked on the door. White's brother answered and told Crump that White was not at home. He allowed Crump to enter the house to look for him. While looking through the house, Crump saw by the couch a pair of damp tennis shoes with the shoestrings removed. Crump picked up the tennis shoes, inspected the tread, and carried them outside to compare to the footprints. They were identical.

The stolen tools were recovered from the home of Rick Hatfield, who pled guilty to the burglary and testified against White. The stolen cooper wire was recovered from Myron Mitchell's salvage yard. Though unable to identify White at trial, Mitchell testified that he bought the wire from a young man with long hair, a beard and glasses. A photograph of White which depicted his appearance at the time of the crime showed him with long hair, a beard and glasses.

## I. Seizure of Tennis Shoes

■ White moved to suppress the tennis shoes seized from his home as the product of a warrantless search and seizure. After a hearing, the trial court denied the motion and admitted the tennis shoes over objection.

The State has the burden to prove that a warrantless search fell within one of the exceptions to the warrant requirement. On review, this Court will not reweigh the evidence but will look to the evidence most favorable to the trial court's ruling together with any uncontradicted adverse evidence. *Lance v. State* (1981), Ind., 425 N.E.2d 77. The State contends that this search and seizure falls under the exception to the warrant requirement known as the plain view doctrine.

The plain view doctrine announced in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), applies when three requirements are met: the initial intrusion is lawful, the incriminating evidence is discovered inadvertently, and it is immediately apparent that the items seized may be evidence of a crime, contraband, or otherwise subject to seizure.

This case clearly meets the first two requirements. White's brother consented to Officer Crump's presence in the house to look for White. A third party having common authority over the premises may consent to a search. *Stallings v. State* (1987), Ind., 508 N.E.2d 550. While looking for White, Crump inadvertently discovered the tennis shoes sitting in plain view on the floor beside the sofa.

To satisfy the third requirement of the plain view doctrine, it must have been immediately apparent to Crump that the tennis shoes were evidence of a crime. As appellant correctly points out, this criminality must have been apparent before Crump picked up the tennis shoes to inspect their tread or carried them to the alley for comparison. "[T]aking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the [premises] or its contents, did produce a new invasion of respondent's privacy...." *Arizona v. Hicks*, 480 U.S. ——, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347, 354 (1987).

In *Hicks*, the Supreme Court considered an emergency search by police looking for possible victims of a shooting, the shooter and the weapon. While thus lawfully in the apartment, police noticed expensive stereo equipment that appeared to be out of place. The police moved the equipment to inspect the serial numbers and, from the serial numbers, determined that the equipment was stolen. The Court held that moving the equipment "did constitute a 'search' separate and apart from the lawful objective" of the entry. *Hicks*, 480 U.S. at ——, 107 S.Ct. at 1152, 94 L.Ed.2d at 353.

Likewise, picking up the tennis shoes constituted a search outside the limits of the lawful objectives of Officer Crump's presence. He had been allowed into the house to look for White; he could not have hoped to find him by picking up the shoes. To paraphrase Justice Scalia, a search is a search, even if it happens to disclose nothing but the bottom of a tennis shoe. *Hicks*, 480 U.S. at ——, 107 S.Ct. at 1153, 94 L.Ed.2d at 354. To be justified under the plain view doctrine, the shoes must have been of immediately apparent criminality at the time they were picked up without any consideration of the evidence gained by the inspection or comparison following the seizure.

The Court in *Hicks* also held that probable cause is required to invoke the plain view doctrine. 480 U.S. at ——, 107 S.Ct. at 1153, 94 L.Ed.2d at 355. Indiana has used this test for several years as a guideline to determine when the evidentiary value of property is immediately apparent. *McReynolds v. State* (1984), Ind., 460 N.E.2d 960. Therefore, Officer Crump must have had probable cause to believe that the tennis shoes were evidence of a crime at the time he picked them up.

Probable cause exists if the facts available would warrant a man of reasonable caution in the belief that the items may be evidence of a crime. *Id.*, at 963. A pistol which matched the description of a weapon used in a robbery was of immediately apparent evidentiary value so as to fall within

the plain view doctrine. *Clark v. State* (1986), Ind., 498 N.E.2d 918. Trousers which were wet, muddy, and covered with dark red stains bore readily apparent indicia of criminality, though the stains were not confirmed to be blood until after they were seized and examined further. *Lance*, 425 N.E.2d at 81. A wallet found in plain view in defendant's vehicle, however, was not apparent evidence of a crime until opened by a police officer who found the victim's identification inside. Admission of the wallet was error, though harmless. *Candler v. State* (1977), 266 Ind. 440, 363 N.E.2d 1233.

In this case, Officer Crump followed footprints in the snow from the crime scene to White's home. The prints appeared to have been made by tennis shoes. While lawfully on the premises, Officer Crump inadvertently noticed wet tennis shoes sitting beside the sofa. The shoestrings were removed as if the shoes had been set out to dry. These facts would lead a reasonable man to believe that the shoes might be evidence of a crime. Probable cause existed, supporting the invocation of the plain view doctrine. The trial court properly admitted the tennis shoes.

### II. Photograph of Defendant

 White asserts error in the admission of a photograph which showed his appearance at the time of the commission of the crime. The photograph was a mug shot cropped by the State to remove all indications of White's criminal history. White thus concedes that no prejudice arose from the fact that the photograph was a mug shot. He argues that the photograph was not relevant because identity was not an issue and that the photograph was prejudicial because it showed White with long hair, mustache, and a generally unkempt appearance.

The identity of the burglar was certainly an issue in the case as White denied any participation in the burglary. To show White's identity as the perpetrator, the State offered the testimony of Mitchell, the salvage yard operator who bought the stolen copper wire. Mitchell was unable to identify White in court but testified that he purchased the wire from a young man with long hair, mustache and glasses. White had changed his appearance and appeared at trial clean-shaven and with short hair. The State introduced the photograph to show White's appearance at the time of the crime.

White argues that the photograph was not admissible for this purpose because it was taken more than sixty days after the date of the crime. Officer Crump, however, testified that he was familiar with the defendant's appearance at the time of the crime and that the photograph accurately depicted his appearance then. The photograph was therefore relevant to show his identity as the person who sold the stolen goods and, by inference, the one who stole them. This probative value is not outweighed by White's less than clean-cut appearance. The photograph was properly admitted.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., concurs in result without opinion.