574 A.2d 653

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Edward DORIA.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1989.

Filed May 3, 1990.

364

Stuart B. Suss, Asst. Dist. Atty., West Chester, for Com., appellant.

Bernard L. Siegel, Philadelphia, for appellee.

Before CIRILLO, President Judge, CAVANAUGH, BROSKY, OLSZEWSKI, DEL SOLE, MONTEMURO, TAMILIA, KELLY and JOHNSON, JJ.

TAMILIA, Judge:

This appeal by the Commonwealth is before this Court en banc upon the granting of appellee Edward Doria's application for reargument. By memorandum filed February 21, 1989, a three-judge panel of this Court reversed a January 11, 1988 Order of the Court of Common Pleas of Chester County suppressing all evidence secured as a result of a search conducted pursuant to a warrant by reason of the suppression court's finding "no probable cause for a police officer or a reviewing magistrate to conclude that property stolen twelve days before execution of a warrant would be found on the premises [appellee] shared with his mother." Slip Op., Smith, J., 2/11/88, p. 5.

The underlying factual history of this case as established by the record is as follows. On May 14, 1987, Detective Paul Raley of the Major Crimes Division of the Philadelphia Police Department procured and executed a search warrant for an apartment in the Carl Mackley Apartments in Philadelphia. In this instance, the personal information regarding the probable cause for the warrant came not from Detective Raley, but from summaries provided him by Detectives David Raum and John R. Bailey of the Tredyffrin Township Police Department, Chester County. Additional information supplied to Detective Raley was summarized from a Delaware County arrest warrant affidavit prepared by Pennsylvania State Police Officer Thaddeus Mesh. The search warrant affidavit in question states:

On 3-11-87 at approx. 10:00 AM the residence of Linda Doyle located at 804 Meadow Crt. in Glen Mills Pa. was entered by forcing the front door with a pry type instrument. The incident was witnessed by a neighbor Randy Currie, 31, a resident of this private development. Just prior to the burglary Currie spoke with the operator of a yellowish/tan color Chevy Monte Carlo, which was

parked outside of 804 Meadow Crt. Currie then entered his own residence and looked out his window and saw this operator exit the auto and remove a pry type instrument from his waistband and walk up to the front door of 804 Meadow Crt. He stuck the pry type instrument into the door and forced it open. Currie called the superintendent of the development Arthur Spaid, 62 W/M, who arrived shortly thereafter on the scene. Spaid then spoke to the same W/M, that entered the house. This male was just leaving the front of the house carrying a pillowcase. This male got into the yellowish/tan Chevy and drove from the scene. The male (Spaid) recorded the tag number of the auto which was Pa. Lic. # NZH–089.

This burglary was investigated by Trooper Robert Foster and Trooper T.J. Mesh of the Pa. State Police. He learned that numerous articles of jewelry and a pillow case were missing from the apartment at 804 Meadow Ctr. [sic] On 5–11–87, Trooper Foster showed a series of photos to both Currie and Spaid and they both identified Edward Doria W/M, DOB 10–5–57 as the male they saw enter and leave the residence at 804 Meadow [C]rt.

Det. David Raum of the Tredyffrin Township Police Dept. was interviewed by the affiant. Det. Raum stated that for the last three weeks Edward Doria has been a suspect in several burglaries in that township. He stated that on May 2nd 2 houses in the Chesterbrook area where entered by prying open the front doors. In the first burglary at 11 Painters Ln. a S & W .38 cal. revolver and assorted jewelry was taken. In the second at 191 Valletstream Ln. the items were placed in a pillowcase but were left at the scene when the owner returned home. Det. Raum further stated that on May 2nd. 1987 at approx. 10:10 AM Edward Doria's car was observed at 102 Camsten Crt. Mr. Paul Devito stated that he observed a yellow Monte Carlo pull into his neighbor's driveway and a W/M and a W/F got out and walked up to his neighbors [sic] door. The neighbor was away for the weekend. Devito walked outside and looked in the direction of the W/M and W/F. Both then walked back to the car and

drove off. Devito reported the license number as Pa. Lic. # NZH–089. Det. Raum stated that he conducted his own investigation into these incidents and learned that Edward Doria owner of the yellow Monte Carlo is currently on State Parole for Burglary. He checked Mackley Apts. at M & Bristol Sts. in Philadelphia.

During the week of 5–6–87 and 5–12–87 Det. Raum conducted a surveillance at the Carl Mackley Apt's. He saw that Edward Doria was sleeping there and went in and out during the day.

The affiant requests that this warrant be issued for the following reasons:

1—It is believed that Edward Doria is a resident at apt. # 136 at the Carl Mackley apts.

2—It is believed that Edward Doria is responsible for the 2 burglaries that occurred on May 2nd in the Chesterbrook Development. The method of entry was the same and jewelry was taken. This is the same as the Burglary that occurred on 3–11–87 in which Doria was identified.

3—It is believed that Doria is dealing in some jewelry. He was observed to have made 2 trips on the same day to the same jewelry store. Each time he entered empty handed and came out empty handed.

4—It is believed that Doria is a suspect in approx. 10 other Burglaries that have occurred in Tredyffrin Township.

Thursday 5–14–87 Edward Doria was arrested by police at 500 E. Allegheny Ave. and charged with Burglary from 3–11–87.

The allegation that the eyewitness Spaid recorded the license number which was traced to appellee's automobile was subsequently conceded by the Commonwealth to be incorrect. This information was apparently culled from other sources and mistakenly attributed to Spaid.

After executing the search warrant with Detective Raley on May 14, 1987 at the Carl Mackley apartment rented to appellee's mother, but where appellee was believed to be

residing, Detective Bailey testified neither the jewelry, the gun nor any other item listed in the warrant was found during the search. However, he did find other items listed as missing on police crime reports, namely a black leather jacket and six coin sets in cardboard folders. The leather jacket was found hanging in a closet in the apartment, while the coin sets were found on top of a bookshelf and a cabinet. Detective Bailey then telephoned the owner listing the jacket as missing for a description of the jacket, and he was given a size and brand name which matched that of the jacket found in the closet. As to the coin sets, Detective Bailey also telephoned their purported owner, and she also described them sufficiently for the police to seize them.[1]

The issues before this Court on reargument deal solely with the propriety of the affidavit of probable cause, the subsequent seizure of the jacket and coin sets and the good faith of the police in executing the search warrant at the Carl Mackley Apartments. We have undertaken a review of those issues and the appropriateness of the trial court's determination. We also undertake to determine the appropriateness of the panel's action and, in doing so, conclude this review was improvidently granted.

1. The Dissenting Opinion by Montemuro, J., relies heavily on *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), as authority for the theory that in seizing the jacket and coin set, the action was impermissible under the plain view doctrine. We believe this is a misapplication of *Hicks* and limits police action in a search, pursuant to a warrant, beyond what was intended. In *Hicks,* the police were looking for a shooter and weapons after a report was made that a shot had been fired through the floor, injuring a person below. During that search, the police turned over stereo equipment and obtained a serial number, constituting a separate search. Here, there was no "separate search" as the police were looking for items taken in two burglaries and came upon items they had reason to believe were taken from other burglaries. Their knowledge of victims who confirmed the identity of the items fully conforms with permissible action under *Hicks* which recognized that under the plain view doctrine and exigency of the circumstances, additional unspecified goods might be seized. *Hicks* simply held that a legitimate search for a man and a gun cannot be extended into another intrusion such as looking for stolen goods which could only be identified by serial numbers. It would permit a seizure under a search warrant for burglarized material when items from other burglaries, which could be identified, were found in plain view.

■■ As to the first issue as stated by the majority of the panel, the police had probable cause to believe that Edward Doria committed three burglaries, one on March 11, 1987, and two on May 2, 1987. Based on this information, a search warrant was obtained for the residence of Doria's mother, which was where he made his home. The affidavit portion of the warrant specified that the police were attempting to find burglary tools and property taken during the three burglaries, specifically:

Pry-type tools or large screwdriver. Any and all guns in particular a Smith & Wesson .38 Cal. revolver mod. # 36. Assorted jewelry in particular a jade pendent in the shape of a tear drop (no setting) and a gold pinky ring inscribed 'FPO' with a diamond.

We find no error in the probable cause to make a search for the property detailed, based on information and warrants provided by detectives and state police located in adjacent jurisdictions and supported by a surveillance of the residence. *Commonwealth v. Crawford*, 320 Pa.Super. 95, 466 A.2d 1079 (1983); *Commonwealth v. Hutchinson*, 290 Pa. Super. 254, 434 A.2d 740 (1981).

■■ The second issue relates to admissibility of the evidence seized in the course of the search which was unrelated to the above specified property, none of which was found, and which supported charges for burglaries unrelated to those upon which the search warrant was issued. The trial court found that while there was no probable cause for the initial issuance of a warrant, the property seized would have been admissible as evidence had the initial warrant been valid. In this finding, the trial court was correct.

We hold that, supported by a valid search warrant, the evidence seized, relating to crimes not specified in the warrant, which was inadvertently found, may be admitted as evidence in the trial of those crimes.

As stated above, while no probable cause existed to arrest appellee or cause a search warrant to issue on the crimes subsequently charged, based on the evidence found at ap-

pellee's residence, the seizure of that evidence is not rendered inadmissible. Appellee Doria was a suspect in ten additional burglaries and while the police had only suspicion and insufficient knowledge upon which to base a search warrant or arrest, they were not required to dismiss the knowledge from their minds while conducting a valid search for evidence of other crimes. Under the plain view doctrine, the seizing of property which was related to crimes other than those specified in the warrant was proper. The police found six coin sets which had been taken in a burglary on April 22, 1987 and a black leather jacket which had been taken in a burglary on April 27, 1987. Having knowledge of the crimes to which these related, although not covered by the warrant, the officer conducting the search seized the property which they came upon inadvertently. The officer confirmed, by phone, with the victims the likelihood that these were items taken during the two burglaries, following which he seized them. We find no illegality in this procedure and believe it is clearly supported by decisions of the Supreme Court of the United States. *Commonwealth v. Millard*, 273 Pa.Super. 523, 417 A.2d 1171 (1979), summarized this view as follows:

> [*Coolidge v. New Hampshire*,] "emphasized that under the so-called 'plain view' doctrine it would sometimes be permissible for police to seize items found while executing a warrant naming other objects[.]" W. LaFave, 2 Search and Seizure 165 (1978); see 403 U.S. [443] at 465–68, 91 S.Ct. at [2022] 2037–39 [29 L.Ed.2d 564]. The police must come upon the evidence inadvertently, in a place where they have a legal right to be at the time of the discovery, and it must be immediately apparent to them that the evidence is of incriminating character. See 403 U.S. at 465–69, 91 S.Ct. at 2037–40; *Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799 (1974).

We believe this seizure complies with the inadvertency requirement of the plain view doctrine, which has been generally accepted in Pennsylvania. *See Commonwealth v.*

*Terra,* 292 Pa.Super. 250, 437 A.2d 29 (1981); *Commonwealth v. Casuccio,* 308 Pa.Super. 450, 454 A.2d 621 (1982).

Since there appears to be no error in the findings by the majority of the panel in this case, we affirm and reinstate its decision and find reargument before the en banc Court to have been improvidently granted.

Order reversed; case remanded for trial.

Jurisdiction relinquished.

KELLY, J., concurs in the result of this opinion and files a concurring statement.

MONTEMURO, J., files a dissenting opinion, in which DEL SOLE and JOHNSON, JJ., join.

KELLY, Judge, concurring:

I concur in the result. I note that in *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), the State of Arizona had conceded that the officer lacked *probable cause* and stipulated that he had only *reasonable suspicion* for his "search" of the underside of the stereo equipment located in plain view. In the instant case, no such fatal concession was made.

Prior to the search here, the officers had *probable cause* to believe that appellant had resumed his former trade as a local burglar. Combined with the discovery of items which (while not involved in the burglary for which probable cause to suspect appellant had been established) nonetheless fit *general* descriptions of property recently stolen in unsolved local burglaries, the police had evidence demonstrating a sufficient probability that the items were stolen to warrant the seizure of those items.

Probable cause is not certitude, nor even preponderance; rather, it is merely a sufficiently substantive probability to justify the intrusion involved. I find probable cause present here, *prior* to the post-seizure conduct of the officers calling the owners for a more detailed description of

the property stolen, which further confirmed the *pre-existing* probable cause.

MONTEMURO, Judge, dissenting:

Following my review of the record before us in this case, I must respectfully dissent. Based upon the United States Supreme Court's decision in *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), I would affirm the trial court's order suppressing the leather jacket and coin sets. I agree with the majority's determination that probable cause existed to support the issuance of the search warrant, and that, consequently, the police could validly enter the residence of Doria's mother to search for the items listed in the search warrant. I do not agree, however, that the police, in executing this search warrant, validly searched and then seized the leather jacket and coin sets under the plain view doctrine.

The elements of the plain view exception to the warrant requirement were set forth in *Coolidge v. New Hampshire*, 403 U.S. 443, 465–469, 91 S.Ct. 2022, 2037–40, 29 L.Ed.2d 564 (1971) as follows: The police must come upon the evidence inadvertently, in a place where they have a legal right to be at the time of the discovery, and it must be immediately apparent to them that the evidence is of an incriminating nature. *See also Commonwealth v. Millard*, 273 Pa.Super. 523, 417 A.2d 1171 (1979). *Coolidge* has been recently clarified by the *Arizona v. Hicks* decision, where police were lawfully in an apartment immediately following a shooting incident, searching for the shooter, for victims, and for weapons, when they noticed expensive stereo equipment which appeared to be out of place in the "squalid and otherwise ill-appointed four-room apartment." *Arizona v. Hicks, supra* 480 U.S. at 323, 107 S.Ct. at 1151. A police officer moved the stereo equipment in order to read serial numbers. After phoning the serial numbers into police headquarters, the police learned that at least some of the stereo equipment was indeed stolen and, on that basis, the equipment was seized. Justice Scalia, writing for the ma-

jority of the Court, held that the moving of the equipment by the police officer in order to bring the serial numbers into view constituted a "search" under the Fourth Amendment:

> Merely inspecting those parts of the turntable that came into view during the latter search would not have constituted an independent search, because it would have produced no additional invasion of respondent's privacy interest.... But taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry....

*Id.* at 325, 107 S.Ct. at 1152.

The Court in *Hicks* then addressed for the first time the question of whether under the Fourth Amendment probable cause is required in order to invoke the plain view exception to the warrant requirement. The Court held that probable cause is required before the plain view doctrine can justify the warrantless search or seizure of an item in a dwelling-place. Finding that the police had no probable cause to believe the stereo equipment was stolen property *prior* to searching it, the *Hicks* Court affirmed the order suppressing the evidence. "The theory of [the plain view] doctrine consists of extending to non-public places such as the home, where searches and seizures without a warrant are presumptively unreasonable, the police's longstanding authority to make warrantless seizures in public places of such objects as weapons and contraband.... Dispensing with the need for a warrant is worlds apart from permitting a lesser standard of *cause* for the seizure than a warrant would require, i.e., the standard of probable cause." *Id.* at 327, 107 S.Ct. at 1154.

In this Commonwealth, no appellate decision has addressed the *Hicks* decision in a factually analogous situation. *See Commonwealth v. Carelli,* 377 Pa.Super. 117, 546 A.2d 1185 (1988) (no search of evidence occurred where officers merely observed the interior of a garage); *Com-*

*monwealth v. Ferrari*, 376 Pa.Super. 307, 545 A.2d 1372 (1988) (search of automobile was justified by the combined effort of the plain view exception and the automobile exception); *Commonwealth v. Pine*, 370 Pa.Super. 410, 536 A.2d 811 (1988) (police had probable cause to search a television set for serial number where appellee was observed on the street with a television set in the middle of the night in an area known for burglaries, the appellee's actions upon seeing the police were suspicious, and his explanation for having the television could not be corroborated); *Commonwealth v. Lemanski*, 365 Pa.Super. 332, 529 A.2d 1085 (1987). However, a number of other state courts have considered and applied the *Hicks* decision in cases similar to the case presently before this Court.

In *Perez v. State of Florida*, 521 So.2d 262 (Fla. 2nd Dist.Ct.App.1988), police were in the defendant's home with a search warrant based upon probable cause to search for cocaine and guns of certain makes, models and calibers. At the time of the search, police were also aware of certain items which had appeared on recent stolen property lists in their county. One item reported as stolen was a Fisher-brand VCR, but at the time of the search of the appellant's home, the police did not have a serial number or other identifying information concerning the missing VCR. The police observed a Fisher-brand VCR during the search, and it was seized by the police for further identification. The *Perez* Court, relying upon *Arizona v. Hicks, supra*, held that the VCR should have been suppressed and reversed appellant's conviction for grand theft:

> ... [Officer] Sherry did not have probable cause to seize the VCR when he entered the home. The stolen property list he carried from the sheriff's office contained no identifying data other than the popular brand name of the VCR, and Sherry had no other independent information concerning any incriminating element regarding the VCR. Sherry's statement that the seizure was for "further identification" supports our holding that probable cause was lacking in this instance. The owner himself

could not show that it was stolen until he procured his records containing the serial numbers. The machine itself bore no discriminating features or marks on it as it sat in its innocuous position in appellant's home. On these facts we hold that neither officer had probable cause to believe the VCR was stolen property and that, therefore, the motion to suppress should have been granted.

*Id.* at 265.

There are a number of cases which, in my view, are distinguishable from the case at bar because police, while searching for items listed on a search warrant, came upon other items which immediately appeared, due to the specific characteristics of the items, to be incriminating under a standard of probable cause. In *White v. State*, 517 N.E.2d 83 (Ind.1987), a police officer followed footprints resembling a tennis shoe from the location of a business which had been burglarized to a house. When the police officer was admitted into the house by the defendant's brother, the officer noticed a pair of damp tennis shoes with the shoestrings removed. He picked up the shoes, carried them outside to compare them to the footprints, and found they were identical. The Supreme Court of Indiana, relying upon *Hicks*, recognized that "[t]o be justified under the plain view doctrine, the shoes must have been of immediately apparent criminality at the time they were picked up without consideration of the evidence gained by the inspection or comparison following the seizure.... Therefore, Officer Crump must have had probable cause to believe that the tennis shoes were evidence of a crime at the time he picked them up." *Id.* at 85. The Court concluded that the officer did have probable cause to search the shoes given the fact that he had seen tennis shoe prints in the snow leading from the scene of the burglary, and he inadvertently noticed the wet tennis shoes which had been set out to dry.

Likewise, in *State of Connecticut v. Ruscoe*, 212 Conn. 223, 563 A.2d 267 (1989), police officers, while searching for

items in a search warrant, noticed items matching property recently reported as stolen in the area. The police also observed that serial numbers were missing from the items. The Supreme Court of Connecticut upheld the search and seizure of this missing property, reasoning that the police officers were "not required to avert their eyes, nor were they required to reject their common sense conclusions, drawn from the absence of serial numbers in the area they ordinarily are located on the backs of ... VCRs, tape decks and televisions." *Id.* 212 Conn. at ——, 563 A.2d at 277. *See also People v. Rios*, 205 Cal.App.3d 833, 252 Cal.Rptr. 653 (1988) (officer had probable cause to seize television in plain view where officer had cause to believe that the defendant had participated in the burglary of the television, television matched the brand and size of the stolen one, and officer was told by a resident that the television had appeared in the residence at about the time of the burglary); *Wicks v. State of Delaware*, 552 A.2d 462 (Del.1988) (seizure of camera permissible under plain view doctrine where defendant had recently offered to sell cameras "he had just picked up" to undercover agent who was posing as a buyer of stolen property, officers who observed camera in defendant's residence noticed that it appeared to be out of place and nothing other than the camera itself indicated that anyone living there had an interest in photography); *State of Minnesota v. Metz*, 422 N.W.2d 754 (Minn.Ct.App.1988) (observations of police that a storage unit contained three partly dismantled motorcycles, parts of other vehicles with identification numbers partially destroyed, and a number of tools, provided probable cause to conclude that the items observed were stolen and thus subject to search and seizure under the plain view exception to the warrant requirement); *Missouri v. Budgetts*, 771 S.W.2d 902 (Mo.Ct.App.1989) (probable cause supported seizure of items in plain view in defendant's residence where police knew defendant was on parole for burglary and items observed were nine brand new coats with price tags still attached).

In the instant case, my reading of the record discloses that when the police entered the apartment rented by Doria's mother to execute the search warrant, they had reviewed a listing of items reported as stolen in the same general vicinity. Detective Bailey observed a leather jacket hanging in a closet which he testified also contained other male clothing. N.T., January 11, 1988, at 69. However, at the moment Detective Bailey observed the jacket, he knew nothing about the specific description of that jacket to give him any reason to think that the jacket he observed was stolen property. In fact, Detective Bailey did not know the size or brand of the stolen jacket until he phoned the victim of the robbery from the apartment during the search. This call was placed *after* Detective Bailey had removed the jacket from the closet and inspected it. *Id.* at 52 and 77. In my view, the search of the leather jacket was unreasonable under the Fourth Amendment, because Detective Bailey did not have any specific information concerning the jacket which had been reported as stolen that he could have used to identify the jacket upon observation. Moreover, nothing about the location of the jacket when Detective Bailey observed it—in a closet among other male clothes— was unusual or suggestive of criminality. *Hicks* clearly stands for the proposition that absent probable cause, the police may not conduct even a cursory physical examination of an item in plain view by deliberately moving or rearranging the item in order to view portions of the item which are concealed. The further investigation undertaken by Detective Bailey supports my conclusion that he lacked probable cause to associate the jacket with criminal activity when he first observed it hanging in the closet.

I would reach the same conclusion with reference to the coin sets. Again, although Detective Bailey knew that some coin sets were reported as stolen on police reports, he did not have a specific description of the sets. He did not have any unique, identifying features of the sets that he could have used to associate the sets he observed in the apartment with the sets reported as stolen. Many individu-

als collect coins and keep them in sets. Further, it was not claimed that the coin collections were observed in a suspicious location in the apartment. I would also note that none of the items listed in the search warrant were found by the police. Under these circumstances, I am convinced that the record before this Court cannot support a finding that Detective Bailey had probable cause to associate the coin sets with criminal activity prior to the time he searched them by opening them and calling the victim of the burglary to secure, at that point, an exact description of the property reported as stolen. I believe that the *Hicks* decision mandates a finding that the search, and ensuing seizure, of the jacket and coin sets violated the Fourth Amendment and, consequently, this evidence must be suppressed.

Although I am unable to agree that it was immediately apparent to Detective Bailey that the leather jacket and coin sets were of an incriminating nature under a probable cause standard, I agree with the majority's finding that the other two prongs of the plain view exception were satisfied in this case. There is no dispute that, by virtue of the search warrant, Detective Bailey was in a place where he had a legal right to be and, secondly, he came upon the evidence inadvertently during his search for the items listed in the search warrant. Further, I certainly am not troubled by the fact that police officers, while executing search warrants, will often have reviewed police records in other, ongoing investigations which may contain lists and descriptions of stolen property or other contraband. The fact that an officer, with this knowledge in mind, may have an opportunity to confirm his suspicions and search and seize evidence not named in a search warrant would amount to good police work as long as the officer has probable cause to believe that the items he finds in plain view are the fruits of criminal conduct by virtue of mere observation.[1] Other-

1. Indeed, the police in the present case certainly suspected that Doria had been responsible for other burglaries in the area, and they were aware of his arrest record. This knowledge, coupled with specific descriptions of the property reported as stolen which would have allowed the police to identify items upon observing them, would have,

wise, police may be able to observe an item during the execution of a search and then, based upon that observation coupled with additional investigation, obtain a search warrant for the item. *See State of Iowa v. Harris*, 436 N.W.2d 364 (Iowa 1989) (while in defendant's residence on another matter, police observed deck shoes and brand name which they later compared with evidence at the scene of a murder and degree of similarity between observed shoes and shoeprint pattern at crime scene provided one of the grounds for formulating a search warrant to seize the shoes).

Finally, it may well be that the decision of the United States Supreme Court in *Hicks* which now requires probable cause in plain view cases will handicap some law enforcement efforts. However, as Justice Scalia reminds us in his Opinion in *Arizona v. Hicks:* "... there is noting new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." *Id.* 403 U.S. at 329, 107 S.Ct. at 1155. Based upon all of the foregoing reasons, I respectfully dissent and would affirm the order suppressing the evidence.

DEL SOLE and JOHNSON, JJ., join.

in my view, supplied Detective Bailey with the necessary probable cause to search and seize the jacket and coin sets.