STATE of Indiana, Appellant–Plaintiff,

v.

William TUCKER, Appellee–Defendant.

No. 67A01–9109–CR–264.

Court of Appeals of Indiana,
First District.

March 25, 1992.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellant-plaintiff.

Larry R. Hesson, Indianapolis, for appellee-defendant.

BAKER, Judge.

In this appeal, the State challenges the trial court's grant of defendant-appellee William Tucker's motion to suppress illegally seized evidence. We affirm.

## FACTS

In the early morning hours of March 24, 1991, the Fairway Restaurant in Greencastle was burglarized, and police found two sets of tennis shoe prints at the scene. Sometime later, but still before sunrise, police arrested Richard Campbell for the burglary. Campbell claimed he and Tucker were the perpetrators, that they had burglarized several other places, that the Fairway burglary was Tucker's idea, and that both he and Tucker wore tennis shoes during the burglary.

Police located Tucker and kept him under surveillance as he traveled in Campbell's car to his place of employment, a Greencastle fast food restaurant. Wearing jeans, a T shirt, and tennis shoes, Tucker went into the restaurant and changed into his uniform. He came outside, and the police watched him put his street clothes, including his tennis shoes, in his own car, which had been parked at the restaurant for several hours, and walked to a nearby grocery store. Police on the scene reported Tucker's actions and were told to arrest him.

After transporting Tucker to jail, the police returned to the restaurant parking lot with orders "to do a plain view search [of the car] and if [they] found any evidence linking [Tucker] to the crime, to have it impounded and inventoried." *Record* at 89–90. The police approached the vehicle and, using flashlights, looked inside where they saw a pair of tennis shoes lying on the front seat, with the soles unobservable because they were facing down. They opened the unlocked car, removed the tennis shoes, turned them over to see the tread, and one of the officers identified the tread of the shoes as matching one of the sets of prints left at the scene of the burglary. Pursuant to their earlier orders, the police then searched the remainder of the car and impounded the car and its contents.

## DISCUSSION AND DECISION

### Standard of Review

Generally, a search and seizure must be both reasonable and carried out under a properly issued search warrant to pass constitutional muster. *Rabadi v. State* (1989), Ind., 541 N.E.2d 271, 274. The warrant requirement is almost absolute, and if a search is conducted without a warrant, the State bears the burden of proving the warrantless search was justified under one of the exceptions to the warrant requirement. *Id.* In the present case, then, because the trial court found the State failed to meet its burden of proof, the State is appealing from a negative judgment, which we will reverse only if the evidence is without conflict and points unerringly to a conclusion opposite that reached by the trial court. *State v. Blake* (1984), Ind.App., 468 N.E.2d 548, 550.

### Plain View

At the hearing on the motion to suppress, the State first argued the search and seizure were appropriate under the plain view doctrine. In *White v. State* (1987), Ind., 517 N.E.2d 83, another case involving the seizure of tennis shoes, our supreme court reiterated the requirements of admissibility under the plain view doctrine. "[T]he initial intrusion [must be] lawful, the incriminating evidence [must be] discovered inadvertently, and it [must be] immediately apparent that the items seized may be evidence of a crime, contraband, or otherwise subject to seizure." *Id.* at 85.

Here, regardless of the resolution of the first requirement, the State failed the second and third. The police did not inadvertently stumble onto the tennis shoes: they went to the car specifically looking for the shoes or other evidence of Tucker's involvement in the burglary. Moreover, the trial court's determination that the evidentiary nature of the tennis shoes was not immediately apparent was correct, for with their soles hidden from sight, the shoes were not admissible under the plain view doctrine. "To be justified under the plain view doctrine, the shoes must have been of immediately apparent criminality at the time they were picked up without any consideration of the evidence gained by the inspection or comparison fol-

lowing the seizure." *Id.*[1] The trial court therefore properly found the tennis shoes were inadmissible under the plain view doctrine.

*Inventory Search*

█ The State also sought admission on the basis of a so-called inventory search. An inventory search is one conducted under routine administrative procedures designed to protect private property in police custody, protect the police from claims of lost or stolen property, and to protect the police from potential danger. *Foulks v. State* (1991), Ind., 582 N.E.2d 374, 376. Here, although it is undisputed the Greencastle police routinely conduct inventories of impounded vehicles, the State makes no attempt to conceal the fact the search was conducted as part of an investigation, not "as a matter of routine department policy to fulfill the caretaking functions." *Rabadi, supra,* at 274. The officers who searched the car were told to look for evidence and then impound the car and do an inventory search if they found anything. We will not countenance such fishing expeditions. An illegal search, though it be called an inventory search, is still an illegal search.

█ The inventory search argument fails for another reason. The only evidence Tucker sought to have suppressed was the pair of tennis shoes. These were discovered before the police began their so-called inventory search, and so, even if the car was properly impounded and subjected to an inventory search after the tennis shoes were removed, the seizure of the tennis shoes was in no way pursuant to the inventory search. Indeed, the police were ordered to impound the car and conduct an inventory search only if they discovered the shoes or other evidence. The trial court properly found the tennis shoes were not seized as a result of a valid inventory search.[2]

The judgment of the trial court is in all things affirmed.

ROBERTSON and RUCKER, JJ., concur.

1. In *White,* the arresting officer was dispatched to the scene of a burglary. Upon arrival, he found tennis shoe prints on a table under a broken window in the burglarized building. He followed the same prints back to White's house, and was allowed in by White's roommate. A pair of wet tennis shoes, with their laces removed as if the shoes had been set out to dry, was sitting beside the living room couch. The officer noticed the shoes, picked them up, looked at the tread, and determined it matched the tread in the prints he had followed. On appeal, in addition to finding the first two requirements of the plain view doctrine were met, the court held the facts were sufficient to establish probable cause for an immediate belief in the shoes' criminality.

Here, on the other hand, in addition to failing the second requirement, there was nothing distinguishing about the shoes *other than* their tread. All the police saw was a pair of tennis shoes, and the criminality of those shoes was not immediately apparent.

2. The State relies on *Baker v. State* (1990), Ind., 562 N.E.2d 726 and *Johnson v. State* (1990), Ind., 553 N.E.2d 477 for the proposition that police had a duty to impound Tucker's car and that the tennis shoes would have inevitably been discovered. Those cases are inapposite, however. In *Baker* and *Johnson,* the police properly impounded vehicles and *subsequently* discovered evidence. Here, on the other hand, the police impounded Tucker's car only because they had already illegally discovered the tennis shoes.