J-S03018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CURTIS WORMLEY | |
| Appellant | No. 1242 EDA 2013 |

Appeal from the Judgment of Sentence November 14, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010791-2010
CP-51-CR-0011695-2010

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and OTT, J.

MEMORANDUM BY PANELLA, J.                **FILED MARCH 24, 2015**

Appellant, Curtis Wormley, appeals from the judgment of sentence entered November 14, 2012, by the Honorable Daniel J. Anders, Court of Common Pleas of Philadelphia County, following the denial of Wormley's Motion to Suppress Physical Evidence.  We affirm.

We take the underlying facts in this matter from the trial court's April 3, 2014, opinion.

> Philadelphia Police Detectives Don Suchinsky and Steve Grace were assigned to investigate a kidnapping and shooting that occurred on July 1, 2010.  As part of their investigation, the detectives interviewed the shooting victim's two brothers and cousin who witnessed the shooting.  They told the detectives that an individual known to them as "Q" accused the four men of stealing ten pounds of marijuana from ["Q's"] store located at 4927 Old York Road.  "Q" confronted them, kidnapped them in a purple van, and tied their hands and feet with duct tape and rope.  "Q" drove the men to a remote location where he pistol-whipped and threatened the men to either return the narcotics

or pay him the monetary value for the drugs. One of the men was shot during this interaction. N.T., 9/10/2012 at 40-45.

While conducting a search of ["Q's"] store located at 4927 Old York Road, the detectives recovered a business license in the name of Darin Thomas. The license listed an address of 87 West Sharpnack Street. Detective Grace obtained a Pennsylvania Driver's License photo of Darin Thomas and showed it to one of the witnesses. The witness identified the individual in the photo as the brother of the person that they knew as "Q". During a [visual] check of 87 West Sharpnack Street before applying for the search warrant, the detectives observed a purple van parked nearby. The van matched the description provided by the eyewitnesses, and the van's Pennsylvania license plate came back to 87 West Sharpnack Street.

As a result of this information, Detectives Suchinsky and Grace obtained a search warrant for 87 West Sharpnack Street. The warrant identified the items to be searched for and seized as "Firearms, any ballistic evidence, any information concerning the identity of suspect "Q" and any other items of evidentiary value so that this investigation can be brought to a successful conclusion." Although the search warrant does not mention "narcotics" as an item to be searched and seized, the affidavit of probable cause contains a summary of the detectives' investigation to date as well as a possible motive of the crime, *i.e.*, that "Q" demanded the return of his narcotics or money prior to the victim being shot. N.T. 9/10/2012 at 45-46, 60, 63-65; Search Warrant and Affidavit No. 151128.

On July 16, 2010, the detectives executed a search warrant for 87 West Sharpnack Street. A female let the detectives into the building and told them that [Wormley] was sleeping in the rear bedroom on the second floor. Detective Suchinsky entered the bedroom and found [Wormley] sleeping next to a baby. Detective Suchinsky searched the bedroom and recovered bullets, a holster, a roll of duct tape, a state identification card with [Wormley's] name, mail and shipping labels listing [Wormley's] name with the address of … 87 West Sharpnack Street, the key to the purple van believed to be linked to the crime, and $150. N.T., 9/10/2012 at 46-47, 52, 56-57.

As Detective Suchinsky searched the rear bedroom, Lieutenant Lark searched the room adjacent to [Wormley] for

weapons and contraband. As part of her search, Lieutenant Lark observed a large freezer that measured four feet long by three feet high. As Lieutenant Lark searched the freezer, she discovered a large trash bag inside the freezer. Inside the trash bag, Lieutenant Lark found several wrapped bags containing what she immediately recognized as marijuana. The officers seized over 10 pounds of marijuana from the freezer. N.T., 9/10/2012 at 47-48; 68; N.T., 9/11/2012 at 13-22.

Lieutenant Lark was aware that – prior to executing the search warrant – the warrant was based upon a kidnapping and shooting that related to a narcotics dispute. Lieutenant Lark has executed over one hundred search warrants during her twenty-four years as a police officer including as a drug enforcement officer in the 17th police district. When conducting a search for weapons, Lieutenant Lark usually searches closets, bags, basements, under beds, refrigerators, freezers, and anywhere else a firearm or contraband may be concealed. When executing search warrants, Lieutenant Lark has found weapons hidden inside of refrigerators and freezers similar to the freezer she searched at 87 West Sharpnack Street. N.T. 9/11/2012 at 6-9, 11, 21.

Trial Court Opinion, 4/3/14 at 1-3.

Wormley was subsequently arrested and charged with numerous weapons and narcotics-related charges. On May 31, 2011, Wormley filed an Omnibus Pre-Trial Motion seeking, *inter alia*, to suppress physical evidence on the grounds that the search warrant "did not particularly describe the place or persons to be searched or the items of evidence to be seized and did not set forth probable cause for its issuance or for a nighttime search." Omnibus Pre-Trial Motion, 5/3/11 at II.3. The trial court denied Wormley's four-corners challenge after a hearing.[1] On September 18, 2012, a jury

---

[1] The trial court did exclude evidence of zip lock bags (packaging), a cell phone, and scales, for which the Commonwealth failed to provide an account
*(Footnote Continued Next Page)*

convicted Wormley of Possession with Intent to Deliver a Controlled Substance ("PWID"),[2] Persons not to Possess Firearms,[3] and Firearms Not to Be Carried Without a License.[4] On November 14, 2012, the trial court sentenced Wormley to an aggregate term of 12½ to 27 years' imprisonment. On November 19, 2012, Wormley filed a post-sentence motion, which the trial court denied. This timely appeal followed.

On appeal, Wormley contends that the trial court erred when it denied his motion to suppress evidence. We review the denial of a motion to suppress physical evidence as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> Further, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

_(Footnote Continued)_ ─────────

detailing how that evidence was discovered during the search. **_See_** Order, 9/12/12.

[2] 35 Pa.C.S.A. § 780-113(a)(16).

[3] 18 Pa.C.S.A. § 6105.

[4] 18 Pa.C.S.A. § 6106.

*Commonwealth v. Houck*, 102 A.3d 443, 455 (Pa. Super. 2014) (internal citations and quotations omitted).

The trial court's factual findings are supported by the record. We therefore proceed to examine the propriety of the lower court's legal conclusions. Wormley asserts that the warrant authorizing the search of 87 West Sharpnack Street was constitutionally overbroad in that it did not state, with particularity, the items to be searched and seized. *See* Appellant's Brief at 2.

> A search warrant cannot be used as a general investigatory tool to uncover evidence of a crime. *In re Casale*, 512 Pa. 548, 517 A.2d 1260, 1263 (1986); *Commonwealth ex rel. Ensor v. Cummings*, 416 Pa. 510, 207 A.2d 230, 231 (1965). Nor may a warrant be so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize, which would result in the general "rummaging" banned by the Fourth Amendment. *See Commonwealth v. Santner*, 308 Pa.Super. 67, 454 A.2d 24 (1982) (quoting *Marron v. United States*, 275 U.S. 192, 195, 48 S.Ct. 74, 72 L.Ed. 231 (1927)). Thus, Pa.R.Crim.P. 205 specifies the necessary components of a valid search warrant. The comment to Rule 205 provides, however, that even though general or exploratory searches are not permitted, search warrants should "be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." Pa.R.Crim.P. 205 (cmt.). Embracing this approach, we have held that "where the items to be seized are as precisely identified as the nature of the activity permits ... the searching officer is only required to describe the general class of the item he is seeking." *Commonwealth v. Matthews*, 446 Pa. 65, 85 A.2d 510 (1971).
>
> A warrant is defective when its explanatory narrative does not describe as clearly as possible those items for which there is probable cause to search. *Grossman*, 521 Pa. 290, 555 A.2d

896. In assessing the validity of a description contained in a warrant, a court must initially determine for what items there was probable cause to search. *Id*. at 900. "The sufficiency of the description [in the warrant] must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause [to search] and the description in the warrant requires suppression." *Id.*

*Commonwealth v. Rega*, 933 A.2d 997, 1011-1012 (Pa. 2007).

We note at the outset that Wormley does not allege that the search warrant was invalid because it was issued without probable cause. We must therefore measure the description contained in the warrant. *See Rega*, 933 A.2d at 2012. As previously noted, the warrant described the items to be searched for and seized as:

Firearms, any ballistic evidence, any information concerning the identity of suspect 'Q' and any other items of evidentiary value so that this investigation can be brought to a successful conclusion.

Search Warrant and Affidavit No. 151128. The affidavit in support of the application for the warrant provided a further description of the items as follows:

At this time the affiants respectfully requests [sic] approval of this warrant to search the property 87 W. Sharpnack Street by, [sic] for any firearms or ballistic evidence, any duct tape, twine to tip up the complainants, and information leading to the identity of "Q", also any other item(s) of evidentiary value so that this investigation may be brought to a successful conclusion.

*Id*.

We have no problem concluding that the items listed in the search warrant and affidavit were described with sufficient particularity and limited

to evidence directly pertaining to the kidnapping and shooting and to information leading to "Q's" identity. We do not agree with Wormley's contention that the search warrant authorized an impermissible general "rummaging", merely because the scope of the warrant was not limited to specific areas of the residence. As the trial court cogently recognized, "[w]here a search warrant adequately describes the place to be searched and the items to be searched and the items to be seized, *the scope of the search extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted*." Trial Court Opinion, 4/3/14 at 4-5 (quoting **Commonwealth v. Watson**, 724 A.2d 289, 292 (Pa. 1998) (emphasis added)). **See also**, **Rega**, **supra**, at 1013 ("[A] lawful search generally extends to the entire area in which the object of the search may be found.") (citation omitted). Lieutenant Lark testified that, in her experience, weapons are sometimes stored in refrigerators or freezers such as the freezer in which the marijuana was discovered. We are therefore satisfied that the search of the freezer did not constitute impermissible "rummaging".

We further reject Wormley's claim that the narcotics uncovered during the search should have been suppressed as items seized outside of the scope of the search warrant. It is well-settled that when police are executing a search pursuant to a valid search warrant, any "evidence seized, relating to crimes not specified in the warrant, which was inadvertently found, may

be admitted as evidence in the trial of those crimes." ***Commonwealth v. Doria***, 574 A.2d 653, 656 (Pa. Super. 1990) (*en banc*).

Based on the foregoing, we find no error in the trial court's denial of Wormley's suppression motion. Accordingly, we affirm Wormley's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015